[Civ. No. 15702. Second Dist., Div. Three. Oct. 14, 1947.]

ROBERT J. BERTON, a Minor, etc., et al., Appellants, v. CHARLES A. COCHRAN, Respondent.

Zagon, Aaron & Sandler and Ray Sandler for Appellants.

Nourse, Jones, Thompson & Kelly for Respondent.

WOOD, J.—In this action for damages resulting from a collision between a bicycle, which the minor plaintiff was riding from a private driveway onto a public highway, and an automobile, which the defendant was driving on the public highway, judgment upon a verdict was entered in favor of defendant. Plaintiffs appeal from the judgment upon the ground that the court erred in failing to give their requested instruction stating the last clear chance doctrine.

On August 13, 1945, about 6 p. m. and before dark, defendant was driving his automobile west on Valmont Avenue in Tujunga, and the plaintiff Robert Berton, aged 7 years, was riding a bicycle south on a private driveway which intersects that avenue. Valmont Avenue is paved, is level near the place of the collision, and along the north side of the main traveled portion of the avenue there is a small depression or drain which is paved and is a part of a 4-foot-wide paved shoulder which slopes gradually upward toward the outside of the highway. About 10 feet north of, and parallel with, the north edge of the shoulder there is a rock wall 3 or 4 feet in height which extends several feet to the east and to the west from the sides of the driveway. Along the wall there are shrubs and sycamore trees which extend above the wall. The driveway is paved, is about 10 feet wide and extends from the highway pavement to the north about 60 or 70 feet to a private garage, and the only portion of the driveway which is visible, during the last 150 feet while approaching the driveway from the east, is the portion from the north edge of the highway pavement to the rock wall, a distance of approximately 10 feet, referred to as the ''mouth'' of the driveway. The driveway slopes downward from the garage to the highway—a downgrade of approximately 1 foot in each 10 feet. The defendant, who had lived about three blocks from the place of the collision for 13 years, was driving at the time of the collision about 25 miles an hour and the right side of his automobile was about 1 foot south of the north edge of the main traveled part of the highway. In other words, the right side of his automobile was about 5 feet from the north edge of the 4-foot shoulder.

Defendant testified that when he first saw the boy, he (the boy) was about 5 or 6 feet north of the north edge of the highway and about 5 feet west of the east edge of the driveway, that is, about half way between the rock wall and the highway and about the middle of the driveway (with reference to east and west); that the boy was traveling between 15 and 20 miles an hour; that when he first saw the boy, defendant's automobile was about 10 feet east of the easterly edge of the driveway; that after he first saw the boy, and before the collision, the bicycle traveled about 11 feet and the automobile traveled about 15 feet; that the boy went straight onto the highway and did not turn to the right or left; that the collision occurred in front of the driveway a second and a half after he first saw the boy; that it takes about a second to apply the brakes of his automobile and he applied them the moment he saw the boy; that the brakes of his automobile were in good condition and that traveling at the rate of 25 miles an hour his automobile would stop within a distance of 15 feet after the brakes take hold; and that his automobile went about 25 feet after the collision before it stopped at a point about 20 feet west of the westerly edge of the driveway.

A man who was riding with the defendant testified that when he first saw the boy, he (the boy) was about 20 feet up the driveway and the automobile was about 10 or 12 feet east of the driveway; that the automobile was traveling about 20 miles an hour; that at the time the witness first observed the boy the defendant applied his brakes immediately; and that the boy went straight onto the highway and did not turn to the right or left.

Two police officers who arrived at the scene soon after the collision testified that defendant said he was approximately 30 feet east of the driveway when he first saw the boy.

A boy, aged 13 years, called as a witness by plaintiffs, testified that he was walking east on Valmont Avenue, at a place approximately a block west of the driveway, when he witnessed the collision; that when he first saw the boy on the bicycle, the boy was coming from the mouth of the driveway and at that time the automobile was about 50 or 60 feet east of the driveway; that when the boy came from the mouth of the driveway he turned to the east and traveled about 20 or 30 feet in that direction; that defendant

said his brakes were weak and didn't hold and that he was going a little over the speed limit.

Another boy, aged 11 years, called as a witness by defendant, testified that he was walking with the preceding witness; that he did not see the boy come from the driveway, but he saw him after he was in the street when he made a turn to the left; that he first saw the automobile when it was about a block east of the driveway; that he saw the collision; and that defendant said his brakes were weak and he was going a little over the speed limit.

The minor plaintiff testified that he had never ridden a bicycle out of that driveway before the accident; that he started from the garage and coasted onto the street; that after he was in the street he used the pedals, and that he made a left turn in order to stay close to the north side of the street; that he looked both ways before he made the turn, and he saw the car that hit him; that the accident occurred just after he came off the driveway; and that is all he could remember until he woke up in the ambulance.

The father of the minor testified that on the next day after the accident the defendant said: that the boy came out of the driveway, made a right turn and traveled about 8 feet before he struck him; that he (defendant) was going a little over the speed limit; that "he tried to stop as quick as he could"; and that defendant would take care of everything.

The defendant, being recalled as a witness, testified that he did not say that the accident was his fault, or he was going too fast, or his brakes were too weak, or anything of that nature. He testified first that he did not tell the officers that he was approximately 30 feet east of the driveway when he first saw the boy.

█ The question is whether an instruction on the doctrine of the last clear chance should have been given. "The doctrine of last clear chance presupposes that both parties were guilty of negligence; that there must be an opportunity, a *clear chance*, a situation established by substantial evidence, and that the defendant saw or knew of plaintiff's perilous position and could have avoided the collision but, having such opportunity, did not do so." (*Dalley* v. *Williams*, 73 Cal.App.2d 427, 433 [166 P.2d 595].) █ The evidence shows, according to defendant's testimony, that he was 10 feet from the driveway when he first saw the boy,

and shows, according to defendant's alleged statement to the officers, that he was 30 feet from the driveway at that time. Since the driveway was 10 feet wide, it appears from the testimony just referred to that the defendant traveled either 15 feet or 35 feet after he first saw the boy and before the collision. According to defendant's alleged statement to the father of the boy, to the effect that the boy turned to the right and went about 8 feet before he was struck, it appears that the collision occurred 8 feet west of the center of the driveway, and, under that view of the evidence, the defendant traveled 23 feet or 43 feet after he first saw the boy and before the collision. Defendant was traveling about 25 miles an hour or about 37 feet a second at the time he first saw the boy. Therefore, in the view of the evidence most favorable to defendant (relative to the doctrine of the last clear chance), the defendant traveled 15 feet after he first saw the boy and before the collision, and if defendant traveled at the rate of 37 feet a second the collision occurred less than a second after defendant first saw the boy; and, in the view most favorable to plaintiff, the defendant traveled 43 feet after he first saw the boy and before the collision, and if defendant traveled at the rate of 37 feet a second, the collision occurred in less than a second and a half after he first saw the boy. The defendant testified that the collision occurred approximately a second and a half after he first saw him.

Counsel for plaintiff bases his argument that defendant had a clear chance to avoid the accident, principally upon defendant's answer to his question as to how many times defendant could stop his automobile within a distance of 30 feet if he were traveling 25 miles an hour. Defendant answered that he could stop it twice—that he could stop within a distance of 15 feet. He explained, however, with reference to that answer that he meant that going at that rate he could stop within 15 feet after the brakes take hold and that it takes approximately half a second or a second to apply the brakes. Counsel's argument is to the effect that if he could stop twice within the 30 feet that he had a clear chance to avoid the accident. The explanation given by the defendant, regarding that answer, is the reasonable interpretation to be placed upon it. The answer should not be interpreted to mean that he could have stopped his auto-

mobile twice within a distance of 30 feet, going at the rate of 25 miles an hour, since it appears that it would be impossible after stopping the automobile at the end of the first 15 feet to operate it again at the rate of 25 miles an hour within the next 15 feet of the 30 feet and also stop it within the last 15 feet. It is common knowledge that it requires an interval of time, after deciding that the brakes should be applied, to apply pressure on them and that it requires an additional interval of time thereafter for the brakes to commence to be effective. According to defendant's testimony, the boy traveled, after defendant first saw him, about 11 feet straight onto the highway; and according to defendant's alleged statement to the father, that the boy turned to the right and went 8 feet to the west, the boy traveled about 19 feet. Since the boy was traveling about 15 miles an hour, or about 22 feet a second, it appears that he traveled the 11 feet in about one-half second, or that he traveled the 19 feet in about one second. All of the driveway except the 10 feet next to the highway pavement was obscured from defendant's view by the rock wall, bushes and trees, and the minor plaintiff was riding the bicycle downgrade at a fast rate. Irrespective of whether the defendant was 10 feet or 30 feet from the driveway when he first saw the boy, or whether the defendant traveled 15, 23, 35 or 43 feet, after he first saw the boy and before the collision, it appears that the collision occurred within a second or two after defendant first saw him. In the case of *Bagwill* v. *Pacific Electric Ry. Co.*, 90 Cal.App. 114 [265 P. 517], the court said at page 121: "Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise. . . . Like the body of the law of negligence, to which the doctrine is appended, the test remains as that of ordinary care under all of the circumstances. . . . The words mean exactly as they indicate, namely, last *clear* chance, not possible chance." In *Dalley* v. *Williams, supra,* it was said at page 432: "The doctrine presupposes time for effective action and is not applicable where the emergency is so sudden that there is no time to avoid the accident."

Under any view of the evidence herein as to the distance defendant traveled after he saw the boy, it is clear that the emergency arose suddenly and that there is no substantial evidence that defendant had time to avoid a collision

with the fast moving bicycle. The doctrine of the last clear chance is not applicable herein and it was not error to refuse to give an instruction on that doctrine. "The giving of an instruction submitting an issue on the last clear chance doctrine, where there is not sufficient evidence to justify the submission, is reversible error." (*Dalley* v. *Williams, supra,* p. 437.)

The testimony of the boy, who was about a block west of the driveway, that the automobile was about 60 feet east of the driveway when the boy was coming from the mouth of the driveway, and the testimony of the other boy who was with him that the automobile was about a block east of the driveway when he first saw the automobile, is not of value concerning the doctrine of the last clear chance in that such testimony does not, of course, purport to show that defendant knew the boy was in peril. A defendant "cannot be held liable under the last clear chance rule, upon the theory that he would have discovered the peril but for remissness on his part." (*Dalley* v. *Williams, supra,* p. 436.)

The judgment is affirmed.

Shinn, Acting P. J., and Vallée, J. pro tem., concurred.

A petition for a rehearing was denied November 12, 1947, and appellants' petition for a hearing by the Supreme Court was denied December 11, 1947. Edmonds, J., and Carter, J., voted for a hearing.