[Civ. No. 21613. Second Dist., Div. Three. Oct. 22, 1956.]

JUSTIN E. NIPPOLD, Appellant, v. JOHN S. ROMERO et al., Respondents.

Robertson, Harney & Drummond and David M. Harney for Appellant.

Cook & Velpmen and Howard C. Velpmen for Respondents.

VALLÉE, J.—Appeal by plaintiff from a judgment for defendants entered on a jury verdict in an action to recover damages for personal injuries sustained when he came in contact with an automobile owned by defendant Chavez and operated with his permission by defendant Romero.

On May 1, 1954, about 9:45 p. m., plaintiff was walking west across Figueroa Street in the middle of the block where there was no crosswalk when he was struck by the left front side of the automobile going south on Figueroa. Figueroa is 66 feet wide and is divided in the center by double white lines. At the time of the accident no other vehicle was in the immediate vicinity. The only conflict in the evidence is as to where plaintiff was standing at the time he was injured.

Plaintiff's evidence tended to establish that he was crossing at a point approximately 200 feet south of the intersection of Washington Boulevard and Figueroa Street; he was walking at a normal gait; as he approached the center of the street he observed the traffic signal at Washington Boulevard had changed so he decided he ''couldn't get across''; he stopped ''a foot to two feet'' east of the double white line for five to eight seconds to allow the traffic to clear; during that period he looked to the right and to the left; he first observed defendant's automobile as he looked to the right; it was then 10 to 14 feet away and bearing down on him; he was still standing a foot to 2 feet from the double line; the car came over the double line at an angle directly toward him; and he had no opportunity to avoid being hit.

Defendants' evidence tended to establish that defendant

Romero had stopped for the signal at Washington Boulevard; he was driving in the inside lane about 1 foot from the center line at a speed of 25 to 30 miles an hour when he suddenly observed plaintiff walking west about a foot or so on the west side of the center line; he was then about 5 or 8 feet away from plaintiff; he immediately applied his brakes, but he had already struck plaintiff. Romero testified, ''When I first saw him—well, I had no warning at all. I mean it came all of a sudden. I didn't have any chance of doing anything to prevent it.'' After he struck plaintiff he swerved to his left, to a point about one feet east of the center line. Plaintiff was struck by the left front headlight and fender of the car. There were 34 feet of skid marks made by the left wheels of the car beginning one foot east of the double center line and ending at a point four feet east of the line. There was no testimony as to where the skid marks started or terminated in relation to the point of impact.

Plaintiff contends the court erred: (1) in refusing to instruct on paragraph (b) of section 525 of the Vehicle Code; (2) in refusing to instruct on the doctrine of the last clear chance; (3) in overemphasizing the rule on burden of proof and in failing to properly instruct thereon and on the subject of due care; and (4) in refusing to instruct on the power and duty of the jury. The sufficiency of the evidence is not questioned.

 The court read to the jury the following provisions of section 525 of the Vehicle Code:

''(a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

''(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement.''

It refused to read paragraph (b), proffered by plaintiff, which provides:

''(b) The State Department of Public Works shall by regulation determine a distinctive roadway marking which shall indicate no driving over such marking, and is authorized either by such marking or by signs and markings to designate any portion of a State highway where the volume of traffic or the vertical or other curvature of the roadway renders it hazardous to drive on the left side of such marking or signs and marking. When such markings or signs and markings are in place, the driver of a vehicle shall not drive along the

highway to the left thereof, but this shall not prevent turning to the left across any such markings at any intersection or private driveway.''[1]

It is apparent from section 525 in its entirety that paragraph (a) makes it unlawful to drive on any part of the left half of the roadway except under conditions noted in subdivisions (1) through (4). The deleted paragraph (b) makes no change in the law in respect to the duty to drive on the right half of the roadway, other than to make the exceptions inapplicable under certain conditions. The jury was plainly informed it was a violation of the Vehicle Code to drive other than on the right half of the roadway. There is no evidence Romero was attempting to pass another vehicle. The jury's answer to the question whether the automobile crossed over the center line and struck plaintiff while he was standing in a position of relative safety was dependent entirely on which factual situation they chose to believe and accept. The court did not err in refusing to read subdivision

---

[1]Section 525 *in toto* reads: ''Drive on Right Side of Roadway—Exceptions. (a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

''(1) When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement.

''(2) When placing a vehicle in a lawful position for, and when such vehicle is lawfully making a left turn.

''(3) When the right half of a roadway is closed to traffic while under construction or repair.

''(4) Upon a roadway designated and signposted for one-way traffic.

''(b) The State Department of Public Works shall by regulation determine a distinctive roadway marking which shall indicate no driving over such marking, and is authorized either by such marking or by signs and markings to designate any portion of a State highway where the volume of traffic or the vertical or other curvature of the roadway renders it hazardous to drive on the left side of such marking or signs and marking. When such markings or signs and markings are in place, the driver of a vehicle shall not drive along the highway to the left thereof, but this shall not prevent turning to the left across any such markings at any intersection or private driveway.

''(c) It is unlawful to drive any vehicle upon any highway which has been divided into two or more roadways by means of intermittent barriers or by means of a dividing section of not less than two feet in width either unpaved or delineated by curbs, lines or other markings on the roadway except to the right of such barrier or dividing section, or to drive any vehicle over, upon, or across any such dividing section, or to make any left turn or semicircular or U-turn on any such divided highway, except through an opening in such barrier designed and intended by public authorities for the use of vehicles or through a plainly marked opening in such dividing section.''

(b) of section 525 to the jury. Contrary to plaintiff's claim, the jury was instructed that it was a violation of law to cross over a center line except when overtaking and passing another vehicle.

Whether there is any substantial evidence which would justify the application of the doctrine of the last clear chance in a given case is a question of law; and in the absence of such evidence, it is not error for the trial court to refuse to instruct the jury with respect to the doctrine. (*Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 487 [283 P.2d 1].) An instruction stating the doctrine is proper when there is evidence showing: " '(1) That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; (2) that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation; and (3) has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure.' " (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 619 [255 P.2d 785].) If any one of the elements is absent, the doctrine does not apply and the case is governed by the ordinary rules of negligence and contributory negligence. (*Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 483 [283 P.2d 1].)

There was no evidence that after Romero discovered plaintiff's position of danger he had a last clear chance to avoid the accident by the exercise of ordinary care. He had a right to assume plaintiff would yield the right of way. (Veh. Code, § 562.) He observed nothing to put him on notice of danger of injury to plaintiff. None then existed. If Romero saw plaintiff approaching the center of the street walking in the manner shown by the evidence, the evidence is uncontradicted that he did not have knowledge of plaintiff's position of danger until he was only 5 or 8 feet from him. He immediately applied his brakes. The accident then happened in a split second. Considering the relative time and distance factors, it is obvious there was not sufficient evidence from which it could be inferred that Romero had a last clear chance to avoid the accident. "[T]he doctrine pre-

supposes time for effective action and that it is not applicable where the emergency is so sudden that defendant does not have time to avoid the accident; that in order to invoke the doctrine, there must be evidence that defendant had knowledge of the fact that plaintiff was in a dangerous situation from which he could not extricate himself by the exercise of ordinary care and, at that time, defendant had a clear chance to avoid injuring plaintiff by exercising ordinary care and failed to do so." (*Story* v. *Cox*, 130 Cal.App.2d 231, 234 [278 P.2d 720]. See *Jeffs* v. *LaGore*, 131 Cal.App.2d 181, 185-186 [280 P.2d 140].) ■ The court did not err in declining to instruct on the doctrine of last clear chance.

The trial court gave four instructions on the burden of proof requested by defendants. We have examined the instructions and find no overemphasis of the subject.

■ Plaintiff asserts the court erred in refusing to give three instructions requested by him. Two of the instructions defined "presumptions"; the third, the term "preponderance of the evidence." The text of these instructions was adequately covered by those given.

■ It is asserted the court erred in refusing to give an instruction on the presumption of due care. Where the party who is the subject of the presumption appears in court and testifies fully as to his own conduct at the occurrence in question, there is no room for the presumption. The instruction was properly refused since plaintiff testified fully as to his own conduct. (*Gigliotti* v. *Nunes*, 45 Cal.2d 85, 93 [286 P.2d 809]; *Elm* v. *McKee*, 139 Cal.App.2d 353, 363 [293 P.2d 827]; *Ford* v. *Chesley Transp. Co.*, 101 Cal.App.2d 548, 552 [225 P.2d 997].)

Plaintiff claims the court erred in refusing to instruct on the power and duty of the jury in accordance with section 2061, subdivision 1, of the Code of Civil Procedure which reads: "That their [the jury's] power of judging of the effect of evidence is not arbitrary, but to be exercised with legal discretion, and in subordination to the rules of evidence."

■ A court is not required to give every instruction requested even if, considered by itself, it may state a correct and pertinent principle of law; all that is required is that the jury be fully and fairly instructed on all the issues presented. (*Risley* v. *Lenwell*, 129 Cal.App.2d 608, 655 [277 P.2d 897].) It was in the present case.

No error was committed in refusing or in giving the considered instructions.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied November 14, 1956, and appellant's petition for a hearing by the Supreme Court was denied December 19, 1956.