[Civ. No. 22874. Second Dist., Div. One. Apr. 22, 1958.]

OLLIE J. DURKEE et al., Respondents, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation), Appellant.

Robert W. Walker and Matthew H. Witteman for Appellant.

William C. Wetherbee and Byron R. Bentley for Respondents.

LILLIE, J.—This appeal involves a wrongful death action which stems from a crossing collision between appellant's passenger train and respondents' decedent Louis Durkee at the intersection of the Santa Fe main line and Commonwealth Avenue in Fullerton. Trial before a jury resulted in a verdict and judgment of $85,000 against appellant railway. A motion for a new trial was denied.

Appellant's "Grand Canyon" passenger train of four diesel engine units and eight passenger cars was traveling southeasterly over a straight track a bit below 80 miles per hour as it came within a mile of the crossing. The train was equipped with effective brakes, a headlight was burning, a bell ringing and a whistle was sounded for the Commonwealth crossing.

The record discloses evidence that the decedent was unfamiliar with this crossing which was so elevated that it might not be apparent that it was comprised of three sets of railroad tracks. Just previous to the accident, decedent drove his 1934 Ford pick-up truck onto the crossing just before the automatic gates hit the ground. From 71 feet of skidmarks it was estimated that he approached the crossing at a speed rate of 30-35 miles per hour, applied the brakes, skidded and came to rest on the track. The truck being stalled on the eastbound track, decedent, after a futile attempt to start the motor, jumped out, ran around to the front of the truck and with his back to the approaching Grand Canyon Limited was endeavoring to push the vehicle back off of the track when the train collided with the truck, killing decedent.

Two eyewitnesses testified to the effect that before the train arrived at the crossing decedent "got the truck slightly under motion"; that he was trying for a period of five to ten seconds to push it off the track and possibly moved the truck a foot or so. Decedent's truck was on the track "probably a half a minute" before the train arrived; "the interval was very, very short, I have no estimate."

According to the evidence, the automatic signal apparatus was designed to sound a warning bell and activate flasher lights four or five seconds in advance of descent of the gates when an eastbound train crossed a circuit breaker 3,719 feet west of the crossing. The gate was lowering and flasher lights operating as decedent headed for the eastbound track, but there was some conflict in the evidence as to whether the bell and lights came on a few seconds in advance of the gate's descent or whether these events occurred simultaneously. It was respondents' contention that the signal apparatus was defective and that the bell and light gave no previous warning that the gates were about to fall.

The appellant's 68-year-old engineer of the Grand Canyon Limited testified that he could see down the track for a mile and a half, but that he "couldn't be sure" whether he "saw this automobile when it first came on the track." Later this witness stated: "My recollection now is that it was stopped (on the track) when I first saw it." In his deposition the engineer had said that he didn't know whether he saw it at the moment it stopped or just prior to that.

Engineer Meith also testified: "I put the brakes on as soon as I saw the (truck) door open, which was probably a second after I saw the vehicle" when he saw the decedent start to get out of the car. The train was equipped with an automatic speed recorder, the record tape of which was introduced in evidence. According to this speed tape and expert interpretation thereof, there had been an acceleration of train speed from about 77-78 miles per hour 1,500 feet from the crossing to 79 miles per hour at the time the engineer's emergency application of brakes became effective 400 feet from the point of impact. When the accident occurred, the train was going 75 miles per hour and came to a stop 2,400 feet beyond the crossing. The train took 32 seconds to move from the circuit breaker 3,719 feet west of the crossing to the crossing.

It is appellant's contention that on the basis of the factual record it was prejudicial error for the trial court to give an instruction on last clear chance and on the presumption of due

care. It also predicates reversible error on the reading of a part of the deposition of the witness A. J. Meith, and finally, on prejudicial misconduct of counsel.

An examination of the record and of the cases cited leads to the conclusion that there was no error, reversible or otherwise, in the giving of the instruction on last clear chance.

In respect to the doctrine itself, the court in *Connolly v. Pre-Mixed Concrete Co.*, 49 Cal.2d 483, 486-487 [319 P.2d 343] (Dec. 17, 1957) stated: ''In *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, 743 [306 P.2d 432], the last clear chance formula was restated as follows: 'The doctrine of last clear chance may be invoked if, and only if, the trier of the facts finds from the evidence (1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear change to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.' ''

Resting upon a partisan survey of certain evidentiary items, appellant's position on this point is simply that there was no substantial evidence to establish any of these three basic elements, particularly of the third and last.

Obviously, in this type of case in which time elapsing between arrival at a danger point and the ultimate catastrophe is measured in seconds, the inquiry concerning exactly what was done, what could or should have been done by the respective parties, and in whom the fault lies is, by its very nature, bound to involve delicate questions of fact, difficult of solution. This is the primary function of a jury. In the instant case, after a 10-day trial resulting in a reporter's transcript of 884 pages, a jury found for plaintiff, the returned verdict indicating that notwithstanding the fact that the decedent may have negligently placed himself in a position of great peril, defendant railway was found to be at fault. That there is substantial evidence in support of such verdict can hardly be doubted.

Decedent's small truck had become stalled on defendant's track in the face of an oncoming train. Decedent, with his

back to the train, endeavored to push the vehicle off the track during a period of perhaps 30 seconds. It may be, as respondents suggest that ''He was oblivious to the approach of the eastbound Grand Canyon Limited and was concentrating his attention on rescuing his vehicle from a freight train some two to three hundred yards southeast of the crossing, which was enveloped in smoke and presented an unusual and confusing picture to his excited mind.'' No one will ever know. There was evidence of another train and smoke some two or three hundred yards from the crossing.

Appellant's engineer, on the other hand, could see down the track for a mile and a half, and saw the truck either just before or when it first came on the track, or when decedent jumped out and attempted to push his truck out of danger, depending on different versions given by the engineer. There was evidence of a slight acceleration of train speed, rather than a retardation, with an emergency application of brakes too late to save decedent's life. The jury may have believed from the evidence, and evidently did so believe, that had the engineer promptly applied the brakes when he first saw the decedent's peril, the accident could have been avoided. Appellant's assertion that, ''The engineer had absolutely no chance, much less a last and clear chance'' is not an accurate statement; whether such chance existed was a question of fact.

In dealing with the applicability of the last clear chance doctrine and the propriety of giving instructions thereon, an appellate court ''must'' as stated in *Selinsky* v. *Olsen*, 38 Cal. 2d 102 [237 P.2d 645], ''view the evidence most favorable to the contention that the doctrine is applicable . . . since plaintiff is entitled to an instruction thereon if the evidence so viewed could establish the elements of the doctrine.''

Following this rule in the present case, it must follow that the trial court was justified in giving this doctrine to the jury. The instruction, as given, by no means compelled the jury to find for plaintiff; to do so it must first find that there was evidence which brought into play the various elements of the doctrine. With the widely differing factual situations presented, each case must of necessity stand on its own merits. The fact remains that the jury is the trier of the facts.

Nor can approval be given to appellant's contention that because decedent was contributorily negligent as a matter of law, it was prejudicial error for the trial court to instruct on the presumption of due care. In view of the surrounding

circumstances it cannot be said that the decedent was negligent as a matter of law; this, like other controverted matters, was a question for the jury to decide.

■ As stated in *Brandelius* v. *City & County of San Francisco* (Jan. 1957), 47 Cal.2d 729, 736 [306 P.2d 432] ". . . the benefit of the presumption (of due care) is available if such person be deceased and the testimony of plaintiffs' witnesses respecting the deceased's acts and conduct at the time involved is not 'wholly irreconciliable' with such presumption. (*Gigliotti* v. *Nunes,* 45 Cal.2d 85, 93 [286 P.2d 809].)

■ Our review of the record here leads to the conclusion that the testimony of the plaintiff's witnesses was not wholly irreconcilable with the presumption.''

■ Applicable also is the language of *Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630, 636 [255 P.2d 795], in which the reviewing court said: ''It is always easy, after an accident, to see how it could have been avoided, but a man's duty before the calamity is not measured by such *ex post facto* information. . . .'' A person in impending peril, where immediate action is necessary to avoid it, is not required to exercise all that presence of mind which is normally exacted of a careful and prudent person under ordinary circumstances, nor to show that his inability to escape from the threatened danger was a physical impossibility.''

■ The point raised by appellant that it was prejudicial error to permit over objection the reading of a part of the deposition of the witness (engineer) A. J. Meith, in reference to various statements made by this witness as to whether he saw any other trains or cars in his field of vision, is not well taken. The witness stated at the trial that he did not ''recall seeing any'' while in his deposition he had answered ''I don't remember'' or that he didn't know. The trial court permitted a reading of this part of the deposition although stating, ''I hold that it is not impeachment.'' It is to be noted that the statements, although differing, were not radically inconsistent. Regardless of the propriety of the trial court's action, the matter appears to be of relatively little importance and is not of such a nature in view of the entire record as to result in prejudice.

■ The same may be said in respect to appellant's assignment of error that ''Repeated prejudicial misconduct of counsel requires a reversal of judgment.'' This relates to cross-interrogation of witnesses as to the making of a written report concerning the crossing in question and the offering of such

report in evidence, objection to which was sustained. Plaintiff's counsel also referred to such a report in argument and the jury was admonished to disregard "anything concerning a report that is not in evidence." In regard to this and other alleged items of misconduct, these cannot be deemed prejudicial. Moreover they were duly presented to the trial court on a motion for a new trial, which motion was denied.

"A trial judge is in a better position than an appellate court to determine whether a verdict resulted wholly, or in part, from the asserted misconduct of counsel and his conclusion in the matter will not be disturbed unless, under all the circumstances, it is plainly wrong." (*Cope* v. *Davison*, 30 Cal.2d 193, 203 [180 P.2d 873, 171 A.L.R. 667].)

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied May 12, 1958, and appellant's petition for a hearing by the Supreme Court was denied June 17, 1958. Schauer, J., Spence, J., and McComb, J., were of the opinion that the petition should be granted.