[Civ. No. 18853.   First Dist., Div. Two.   July 28, 1960.]

LOUIS E. FAMBRINI, a Minor, etc., et al., Appellants, v. EMMA STIKKERS, Respondent.

Cushing, Cullinan, Hancock & Rothert for Appellants.

Berry, Davis Channell for Respondent.

KAUFMAN, P. J.—This is an appeal by plaintiff, Mark B. Fambrini, by his guardian *ad litem*, Louis Fambrini, from a judgment by the Honorable Norman A. Gregg, Judge of the Superior Court of the County of Contra Costa against his negligence suit for personal injuries.

The sole issue on appeal is the propriety of the court's refusal to give the appellant's offered instruction on last clear chance. The form of the instruction is not in issue, but rather the applicability of the doctrine under the facts of the case.

About 5:20 p. m. on August 5, 1957, a clear day, the respondent was proceeding up Hadden Road in Walnut Creek, when she observed the plaintiff, Mark Fambrini, coasting toward her down the hill on his bicycle at a rapid rate of speed. She recognized the bicycle rider as Mark, a minor 7 years of age, and knew him to be an erratic bicyclist. The respondent was the only eyewitness to the accident, with the exception of Mark who did not recollect the events very clearly. She was going at a rate of from 15 to 20 miles per hour when she first observed him; at that time, the vehicles were about 90 feet apart. He was looking off to his right as he proceeded downhill, and never directed his attention towards the approaching car. The respondent immediately applied the brakes upon observing the appellant, and brought the car to a full stop within about 10 feet. In her pretrial deposition, the respondent stated the only thing she did was apply the brakes, while at trial, she said she veered to the right. The child hit the left side of the front of the car which by that time was fully stopped, was thrown off his bike, and suffered a fractured leg, and other injuries. At the point of impact, the car was from 2½ to 3½ feet left of the center of the road; the child was approximately in the center of the road. At the trial, respondent stated that only a few seconds elapsed between the time she saw the child and her full stop; in her pretrial deposition, she stated it was hard to tell, but she thought it was about a half a minute which she understood to be 30 seconds.

Hadden Road is a two block cul-de-sac in a residential neighborhood in which over 50 children live. It is common for children to ride their bikes on the street. Both appellant and respondent live on the street, the latter having resided there for six years and driven back and forth to work daily for five years, and is familiar with the area. The road has a fairly steep grade on which coasting bikes can attain a good rate of speed. There are no sidewalks, there is no marked center line, and the road has a paved width of 18 feet at the point of impact. Respondent stated there was room for cars to pass her vehicle on the left, and that they did so while she was awaiting the police.

■■■ The appellants' offered instructions were correct as to form. They gave the elements of the doctrine of last clear

chance as set out in *Brandelius* v. *City & County of San Francisco,* 47 Cal.2d 729 at page 743 [306 P.2d 432] :

"The doctrine of last clear chance may be invoked if, and only if, the trier of facts finds from the evidence: (1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure."

The appellants correctly point out that the appellate court in considering the propriety of the instruction must view the evidence most favorable to the contention that the doctrine is applicable, since the plaintiffs are entitled to an instruction thereon if the evidence so viewed could establish the elements of the doctrine. (*Selinsky* v. *Olsen,* 38 Cal.2d 102 [237 P.2d 654] ; *Bonebrake* v. *McCormick,* 35 Cal.2d 16 [215 P.2d 728].)

The appellants also argue that where a trial court refuses to give instructions on the doctrine, the same situation is presented as when a nonsuit, directed verdict, or motion for judgment notwithstanding the verdict is granted, relying on a concurrence by Justice Carter, an advocate of expanding last clear chance, and consistent dissenter where the doctrine was not invoked, in *Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614 [255 P.2d 785]. The test urged is to see if there is any substantial evidence on which the trier of fact could reach a contrary decision, based upon the concurrence and *Hilyar* v. *Union Ice Co.,* 45 Cal.2d 30 [286 P.2d 21], which involved an appeal from a nonsuit, but not the doctrine of last clear chance. Actually, the rule is that there must be substantial evidence present to justify the question of last clear chance going to a jury, and the existence of the substantial evidence justifying the application of the doctrine is a question of law to be determined by the judge. (*Doran* v. *City & County of San Francisco,* 44 Cal.2d 477 [283 P.2d 1] ; *Nippold* v. *Romero,* 145 Cal.App.2d 235 [302 P.2d 367].)

It should also be noted that since the doctrine relieves an injured party of the results of his own contributory

negligence and permits recovery despite such negligence, it applies only in the exceptional case where there is substantial evidence to support a favorable finding on each of the required elements enumerated earlier; if any of these elements is absent the doctrine does not apply and the case is governed by the ordinary rules of contributory negligence. (*Doran* v. *City & County of San Francisco, supra*; *Johnson* v. *Sacramento Northern Ry.*, 54 Cal.App.2d 528 [129 P.2d 503]; *Fleharty* v. *Boltzen*, 137 Cal.App.2d 187 [290 P.2d 311].)

The appellants contend that because of the time element the respondent had a last clear chance and did not exercise the ordinary care required in such a situation because she failed to blow her horn, or swerve. ██ The appellants argue that viewing the evidence most favorable to appellants requires accepting respondent's statement on deposition that she had 30 seconds from the time she viewed the child until the time she stopped. Appellants correctly urge that this extrajudicial statement is excepted hearsay as an admission. (*Bonebrake* v. *McCormick, supra*), and may be used as evidence as well as to impeach. Although the rule stated earlier requires the court to give all favorable import to evidence supporting the applicability of the doctrine, it must be remembered that the evidence must be substantial. ██ For evidence to be substantial, it must be at least ponderable. (*Estate of Teed*, 112 Cal.App.2d 638 [247 P.2d 54].) ██ First, the accompanying remark must be considered, that is, that she said it was hard to tell how much time elapsed when she made her estimate. Secondly, the circumstances of the accident must be taken into account. The vehicles were only 90 feet apart when Mark was first seen. The bike was going at a good rate of speed which is obvious from the damage done when it hit the car which was motionless on impact. The car had been going between 15 and 20 miles per hour when respondent first saw the child. It is inconceivable that it could have taken them 30 seconds to meet; a realistic view of the situation indicates only several seconds could have elapsed as respondent stated at trial. The rule requiring the evidence to be viewed in favor of the doctrine does not require reality to be ignored, since there is the substantiality requirement. Therefore, the happenings must be considered as having transpired within several seconds, which was no doubt the case. Having this in mind, the appellants' contention as to time to react must be viewed.

Several cases are cited for the proposition that it is a jury question as to whether the space of time allowed for avoiding the accident. (*Selinsky* v. *Olsen, supra*; *Durkee* v. *Atchison, T. & S. F. Ry. Co.*, 159 Cal.App.2d 615 [324 P.2d 91].) The distinction between these cases and the present is readily apparent. Both involved defendants who failed to take any action for some of the time available to them, and had they done so the accidents might have been avoided. In the present case, the evidence is undisputed to the effect that respondent acted immediately, and succeeded in stopping her car before it was hit by appellant. ▆▆▆ It is clear the doctrine of last clear chance never meant a splitting of seconds when emergencies arise. (*Rodabaugh* v. *Tekus*, 39 Cal.2d 290 [246 P.2d 663]; *Hickambottom* v. *Cooper Transportation Co.*, 163 Cal.App.2d 489 [329 P.2d 609].) The real objection of the appellants here is not the failure of the respondent to act in the time available but rather the failure to successfully act to avoid the collision.

The appellants also cite some cases arguing from such that failure to blow her horn in the time available was a failure to exercise appropriate care during a last clear chance. (*Peterson* v. *Burkhalter*, 38 Cal.2d 107 [237 P.2d 977]; *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 P.2d 915]; *Center* v. *Yellow Cab Co.*, 216 Cal. 205 [13 P.2d 918].) None of these cases stated that the fact that the party failed to blow the horn by itself indicated a failure to take advantage of a last clear chance, but considered that along with a failure to brake down or swerve after first seeing the plaintiff in peril. Here, the respondent acted immediately and stopped her vehicle.

Appellants make a similar argument to the effect that not swerving is a failure to take advantage of the last clear chance based on *Jones* v. *Gilland*, 137 Cal.App.2d 486 [290 P.2d 329]; *Lebkicher* v. *Crosby*, 123 Cal.App.2d 631 [267 P.2d 361]. ▆▆▆ Again, appellants are correct in pointing out that an admission is an exception to the hearsay rule, and carries evidentiary import (*Bonebrake* v. *McCormick, supra*). Appellants indicate that in her deposition respondent stated the only thing she did was stop, and argue this not only indicates her statement that she swerved made at trial was untruthful but indicates she did not swerve. Assuming such was the case, it must be noted that the parties in the swerving cases all failed to bring their vehicles to a halt, which is an important distinction, but even more crucial is the fact that they hit victims who at the time were standing still and hence,

swerving would have avoided the accident, while such is mere speculation here.

The appellants contend that the application of last clear chance is influenced by the character of the neighborhood, relying on *Hensley* v. *Sellers*, 160 Cal.App.2d 117 [324 P.2d 954]. The case did set out the character of the neighborhood in its statement of facts, but did not indicate exactly what role that played in the decision. In an analogous argument, the appellants allege that the respondent did not exercise the requisite standard of care, citing *Hilyar* v. *Union Ice Co.*, *supra*, for the proposition that where children are known to play in the area the requisite degree of care depends upon this circumstance. ▮▮▮ The citation is true, but the case did not involve the question of last clear chance but rather was speaking of negligence, while here, we are concerned with a doctrine which pre-supposes negligence on the defendant's part. (*Berton* v. *Cochran*, 81 Cal.App.2d 776 [185 P.2d 349].)

▮▮▮ It is possible the characteristics of the neighborhood have some bearing on the care required if there is a last clear chance to avoid an accident, although its real import is on the original negligence of the defendant. However, for this factor to have any weight on this consideration, it must first be demonstrated that there was a last clear chance to avoid the accident. While discussing the standard of care, the appellants point to *Paulos* v. *Market Street Ry. Co.*, 136 Cal.App. 163 [28 P.2d 24] for the proposition that one may not rely upon his own dullness once he sees another in a position of peril when the doctrine of last clear chance is attempted to be invoked. This statement was made in connection with an argument by a defendant that although one might see a person in a position of peril, he might not realize such is the case and the court should look at the individual's capacity to grasp the situation. Needless to say, when placed back into context, it hardly seems accurate to say the respondent reacted with "dullness" when she immediately brought her vehicle to a stop on seeing the child. This purported issue inspires the appellants to literary heights, contending that the standard of care required of respondent under the circumstances was "the jungle alertness of a Bengal tiger in his native habitat or the lightning reflexes of a mongoose engaged in deadly combat with a hooded cobra." In bringing forth this carnival of the animals, appellants have lost sight of the fact that in setting a standard of care one seeks to find the conduct appropriate for a reasonable *man,* and what they silently would require of the

respondent is animal-like qualities so that she would be enabled to brake her car, swerve it, and honk the horn in a matter of seconds. Suffice it to say, before one considers the care required in a last clear chance situation, the last clear chance must be found to be present.

While engaged in literary pursuits, the appellants attempt to immortalize respondent by waxing poetic on a theme found in The Charge of the Light Brigade. They try to analogize respondent's course up Hadden Road to the charge at Balaclava. However, the blunder here is as obvious as that made in the Crimea, even if not as costly; it is apparent that if any comparison is appropriate, the blind and unquestioning charge here was made by the bicyclist. At any rate, it is not too much less in point on the crucial issue here of existence of a last clear chance than some of the more legalistic arguments advanced by appellants.

One line of argument pursued by respondent to support the refusal to instruct on the last clear chance doctrine is the theory that the mere fact that respondent observed appellant some distance away does not in itself invoke the doctrine, since a party is not necessarily in a position of danger throughout his approach, and it is not until such time as he cannot extricate himself that the doctrine applies. (*Rodabaugh* v. *Tekus, supra*; *Clarida* v. *Aguirre*, 156 Cal.App.2d 112 [319 P.2d 20]; *Ferner* v. *Casalegno*, 141 Cal.App.2d 467 [297 P.2d 91]; *Wilson* v. *Knudsen Creamery Co.*, 137 Cal.App. 2d 552 [290 P.2d 677]; *Fleharty* v. *Boltzen, supra*; *Dalley* v. *Williams*, 73 Cal.App.2d 427 [166 P.2d 595]; *Johnson* v. *Sacramento Northern Ry. Co., supra*; *McHugh* v. *Market St. Ry. Co.*, 29 Cal.App.2d 737 [85 P.2d 467]; *Choquette* v. *Key System Transit Co.*, 118 Cal.App. 643 [5 P.2d 921].) The defect in this contention is that giving all the evidence a most favorable effect towards the contention that the doctrine applies compels consideration of the fact that in addition to observing Mark coasting when she turned uphill, respondent stated she knew he was an erratic bicyclist, and also saw that he was not watching her. This would seem to put her on notice of his peril at that point.

The question on which the applicability of the doctrine turns remains; that is, was there a last clear chance to avoid the accident from the time respondent first observed the child some 90 feet away? In answering this question several principles must be kept in mind. First, the chance to avoid the collision must have been clear; last clear chance does not mean

possible chance, or bare chance, but clear chance. (*Berton* v. *Cochran, supra; Dalley* v. *Williams, supra; Poncino* v. *Reid-Murdock & Co.*, 136 Cal.App. 223 [28 P.2d 932].) Secondly, under the most favorable realistic view of the evidence only a few seconds elapsed between respondent seeing the child and impact. The doctrine of last clear chance does not apply to splitting of seconds; when the emergency arises suddenly and there are only a few seconds to avoid collision, and there is no substantial evidence that the defendant had time to avoid the collision, the doctrine of last clear chance does not apply. (*Hickambottom* v. *Cooper Transportation Co., supra; Hall* v. *Atchison T. & S.F. Ry. Co.*, 152 Cal.App.2d 80 [312 P.2d 739] ; *Wilson* v. *Knudsen Creamery Co., supra; Mehling* v. *Zigman,* 116 Cal.App.2d 729 [254 P.2d 141] ; *Berton* v. *Cochran, supra; Poncino* v. *Reid-Murdock & Co., supra.*) There is no substantial evidence here that respondent had time to avoid the collision. The evidence rather indicates that confronted with the emergency respondent immediately applied her brakes bringing the car to a complete stop in seconds, at which point the bicycle crashed into it. The respondent took a reasonable course in the emergency and the appellants actually have based their case on the theory that in fact respondent was not able to avoid collision, rather than being able to establish that she did have a last clear chance to avoid the accident.

Judgment affirmed.

Draper, J., concurred in the judgment.

GOOD, J. pro tem.*—I dissent.

The majority opinion appears to be predicated upon only a limited portion of respondent's testimony and ignores or rejects admissions and other evidence, direct and inferential, that fixes the distance between vehicles at 160 to 180 feet rather than 90 feet and that contradicts her testimony of an immediate stop within 10 feet upon observing the plaintiff's position of peril. The rejected evidence as to distance lies in respondent's testimony that she first observed the boy and knew he was in danger as she went into the curve from Blackwood and that he was then at the McCleary driveway. Later she said he was just coming off the upper level portion of Hadden, which would be a considerably greater distance. The McCleary driveway was 75 to 80 feet above the point of impact

---

*Assigned by Chairman of Judicial Council.

which in turn was 39 feet above a tangent projected by the traffic officer from the opposite side of the Blackwood curve. A tangent from the near side would add another 40 feet to Hadden. The descriptions of the course of the two roads and the photographic exhibits show that Blackwood and Hadden form a continuous curve and that forward visibility would be constant from any point on the first half of the curve. This distance of uninterrupted visibility for a driver entering Hadden was paced by Mr. Fambrini at 180 feet. These factors in evidence, corroborated by the photographs, would well support a jury finding that instead of 90 feet respondent had between 160 to 180 feet of observation of plaintiff upon first discovering his position of peril.

Further her testimony as to an immediate stop within 10 feet (with the boy continuing to coast some 80 feet into her stopped automobile) is contradicted by her admissions to the traffic officer at the scene that she was just "barely moving" or had stopped or "almost" stopped at the time of impact. If the jury found the distance to be either 160 feet or more on her testimony or 180 feet on the Fambrini testimony and further found that she was *almost* stopped it could have drawn the rather compelling inference that respondent did not come to an immediate stop upon first observing the inattentive cyclist but continued ahead for 90 to 100 feet straddling the center of the road by two or three feet (her stopped position) and then made the last instant kind of panic stop that, as she said, stalled her motor. The traffic officer also testified that the bicycle hit respondent's car at its left head-lamp, thus placing the boy 1½ feet on his own side of the road. Because of this and the fact that 8 feet of black-top plus a shoulder of unspecified width was clear and unoccupied at her right it cannot be said *as a matter of law* that a swerve of even 2 or 3 feet to respondent's side of the road was not available to her and, in the exercise of due care, was not required in order to avoid impact. I do not consider it "mere speculation" to assume that if vehicles have even three or four feet of space between them they do not ordinarily collide.

The majority seems to concede that there was substantial evidence of the first two elements of the *Brandelius* formula but relies on the testimony of the 90-foot distance and immediate stop to hold that there was no substantial evidence to support the third element. The ignored evidentiary factors above mentioned were at least of sufficient substance to require a jury determination of whether or not the facts required by

the third element, including time and space, were present at the time and place of the accident in question. Confessing to no great sympathy for erratic young cyclists it is nevertheless the law that they are just as deserving of the right to a jury determination of the facts as any plaintiff in any recorded case wherein the last clear chance doctrine has provided an exception to the consequences of the law of contributory negligence. I would therefore reverse the judgment.

Appellants' petition for a hearing by the Supreme Court was denied September 20, 1960. Peters, J., was of the opinion that the petition should be granted.