[Civ. No. 20630.   First Dist., Div. Two.   May 15, 1963.]

FRANCISCA GODINEZ, as Administratrix, etc., Plaintiff and Appellant, v. JERRY ARTHUR SOARES et al., Defendants and Respondents.

W. J. Cossette and Cruz F. Portillo for Plaintiff and Appellant.

Ricksen, Snook & Vendt, Carl R. Vendt, Richard G. Logan, Bledsoe, Smith, Cathcart, Johnson & Phelps and Robert A. Seligson for Defendants and Respondents.

KAUFMAN, P. J.—This is an appeal by the plaintiff, Francisca Godinez, the administratrix of the estate of G. Godinez, as trustee on behalf of his heirs, from a judgment entered on a jury verdict in favor of all the respondents, in her action for wrongful death. Appellant's husband died as a result of injuries received while a guest in an automobile owned and operated by the respondent, J. G. Beruman, which collided with a tractor and trailer operated by the respondent, Jerry Arthur Soares, in the course and scope of his employment for his father, the respondent, Arthur Soares. Appellant contends that the trial court erred in instructing the jury on the effect of the decedent's voluntary participation in the festivities leading to the intoxicated condition of Beruman, and in refusing her proffered instruction on the doctrine of last clear chance. There is no merit in either of these contentions.

The accident occurred about 9:30 p.m. on October 23, 1959, on State Highway 4 between Brentwood and Antioch at the bottom of a slight dip in the road. At this point, Highway 4 is a 24-foot wide two-lane highway running north and south through a partially built-up area. The testimony of respondents, J. A. Soares and Beruman, the only eyewitnesses, is in conflict on almost all material points.

Respondent Soares testified that about 9:30 p.m., he was driving his father's two-axle tractor and one-axle trailer loaded with tomatoes in the northbound lane toward the cannery at Antioch. His vehicle and load weighed about 10-11 tons. As he approached the crest of the hill about 150-200 yards away from the locus of the accident, he saw the Beruman car standing still to the north off the highway to the left (west). At the crest of the hill, he was going about 25-30 miles per hour but as he came down the hill, his speed increased to 30-35. The posted speed limit in the area was 40 miles per hour. As he started down the hill, he saw the Beruman car about 100 yards away crossing the highway in a southeasterly direction, at about 10-15 miles per hour. He assumed the car was crossing the highway in order to turn off at Sims Road which ran off the highway to his right (east) about 35 feet from the crest of the hill.

However, when the car was completely in the northbound lane facing south about 50-100 feet away and coming towards him, Soares applied his brakes and pulled to the left (west) into the southbound lane. Just then, the Beruman car also turned into the southbound lane and the collision

occurred at a point which was later fixed at about 4 feet east of the center line in the northbound lane. After the accident, Soares' trailer was completely in the southbound lane parallel to the center line with the tractor at a sharp angle heading west, indicating that the tractor had swerved to the left. There were no skid marks from either vehicle prior to the point of impact. The Beruman car was in the northbound lane facing north.

Respondent Beruman testified that on the evening in question, he had one beer with his dinner and left his home in Knightsen about 8:30 p.m. He met the decedent who asked him to drive to Brentwood. They proceeded in the southbound lane of Highway 4 toward Brentwood and stopped off at Jack's Place where each had two glasses of beer with tomato juice. Jack's was located in a dip on the west side of the highway about 222 yards from the crest of the hill. At approximately 9:30 p.m., they left Jack's Place and got into the car which was parked in the big parking lot in front. Beruman, who was driving, looked up and down the highway, didn't see any traffic, and backed his car up onto the southbound lane of the highway. As he was about to go forward, he saw lights of a tractor on his right in the northbound lane coming down the crest of the hill about 200 yards away. He started to move forward in the southbound lane at about 5-10 miles per hour when he suddenly noticed that the tractor and trailer had crossed into his lane and were about 150-200 feet away. He could see the tractor and trailer coming very fast and tried to veer off to the left into the northbound lane to avoid a collision.

The investigation of the accident by the Highway Patrol officers was somewhat hampered by the tomatoes scattered on the highway. Both officers agreed as to the point of impact but there is conflicting evidence as to whether the tractor and trailer were being driven on the wrong side of the road prior to the accident or whether the driver had merely swerved to the left just a second or so before the impact. The position of the tractor and trailer indicated that the tractor was turning to the left and the trailer had not yet had time to follow. The officers could not determine whether Soares had applied his brakes before the accident as the absence of skid marks was not necessarily conclusive on this point. The position of the Beruman car after the accident indicated that it had been facing south at the time of the impact and had been turned around by the forward impact of the tractor. The

tractor and trailer were damaged on the right side. When questioned immediately after the accident, Soares indicated he was going about 35 miles per hour and that the Beruman car was going about 10-15 miles per hour.

The first contention on appeal is that the trial court erred in instructing the jury as follows: ''Where one voluntarily participates in festivities leading to the drunken condition of an automobile driver, the law does not permit such a one to shut his eyes to the hazards of riding with the intoxicated driver and in the event of injury such a voluntary participant is barred from recovery against the driver by his own contributory negligence.''

The instruction was submitted by the respondent Beruman on the basis of the blood alcohol tests. Beruman's test indicated a blood alcohol content of .183 grams of alcohol per hundred grams whole blood. This meant that a person of the approximate size, age and weight of Beruman had consumed a minimum of 6 ounces of 100-proof whiskey or 60 ounces of beer, assuming a 5 per cent alcohol content for a 12-ounce can. The decedent's test indicated a blood alcohol content of .147 grams of alcohol per hundred grams whole blood. This meant that a person of the size, age and weight of the decedent had consumed a minimum of 8 ounces of 100-proof whiskey or 80 ounces of beer. In the opinion of the pathologist and medical examiner for Contra Costa County, the decedent and Beruman were both intoxicated. The expert witness further testified that it is presumed that individuals with a blood alcohol content of .150 or more are sufficiently intoxicated so that their driving of a motor vehicle in a reasonable and prudent manner would be impeded even though they would not necessarily appear intoxicated. Thus, there can be no question that the instruction is amply supported by the evidence (*Jones* v. *Pacific Gas & Electric Co.,* 104 Cal.App. 47 [285 P. 709]; *Schneider* v. *Brecht,* 6 Cal. App.2d 379 [44 P.2d 662]; *Smith* v. *Maloney,* 26 Cal.App.2d 97 [78 P.2d 1034]).

Appellant contends that the applicable rule in the instant case is that of *Noble* v. *Key System, Ltd.,* 10 Cal.App.2d 132 [51 P.2d 887], as the decedent had only a few drinks with Beruman and there was no evidence that the decedent had any indication that Beruman's faculties were impaired. The evidence indicated that the decedent and Beruman had stayed in Jack's Place for about 45 minutes. It is well settled that a guest is precluded from recovery when he knows that

his host has been drinking and knows or should have known that the host is incapable of careful driving (*Enos* v. *Montoya*, 158 Cal.App.2d 394 [322 P.2d 472] at p. 401).

■ The second contention on appeal is the propriety of the court's refusal to give the appellant's proffered instruction on the last clear chance and the instructions on contributory negligence. The answers of both defendants originally alleged contributory negligence and the assumption of risk. In addition, the answer of Soares alleged contributory negligence on the part of the decedent and further alleged the negligence of the respondent Beruman as the sole proximate cause of the accident. At a later point in the trial, counsel for Soares moved to withdraw the defense of contributory negligence as to him and the court granted the motion. On this appeal, it is argued that the court abused its discretion in permitting this amendment and subsequently depriving the appellant of the benefit of the last clear chance instruction against the respondent Soares.

■ The granting or refusal of leave to amend an answer is within the discretion of the trial court (*Redingler* v. *Youle*, 157 Cal.App.2d 596 [321 P.2d 509]). ■ The court's ruling here permitted the withdrawal of a defense, which if valid, would have barred the appellant's recovery. Appellant argues that the amendment deprived her of the benefit of the doctrine of last clear chance. ■ The only purpose of the doctrine, however, is to relieve the injured party from the rigid application of the rule that contributory negligence will bar his recovery when the circumstances are such that it may be said that such a party's negligence is a remote rather than a proximate cause of his injuries (*Sparks* v. *Redinger*, 44 Cal.2d 121, 124-125 [279 P.2d 971]).

■ The elements of the doctrine of last clear chance set out in *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729 [306 P.2d 432] at page 743, are as follows: "The doctrine of last clear chance may be invoked if, and only if, the trier of the facts finds from the evidence: (1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had

152

the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.''

In considering the propriety of the instruction, we must view the evidence most favorable to the contention that the doctrine is applicable since the appellant is entitled to an instruction thereon if the evidence so viewed could establish the elements of the doctrine. The rule is that there must be substantial evidence to justify the question of last clear chance going to a jury and the existence of the substantial evidence justifying the application of the doctrine is a question of law. The doctrine applies only in the case where there is substantial evidence to support a favorable finding on each of the required elements enumerated above.

Viewing the evidence most favorable to the appellant, i.e., that the Soares tractor and trailer were in the wrong lane prior to the accident, we can only conclude that the trial court properly refused the instruction as there was no evidence to support the third element of the doctrine, as outlined above. We note that one of the few facts on which two eyewitnesses agreed is that they were only a few feet apart when each saw the other and realized the danger. Soares testified that the Beruman car was 50 to 100 feet away when he pulled to the left to avoid a collision. As we pointed out in *Fambrini* v. *Stikkers*, 183 Cal.App.2d 235 [6 Cal.Rptr. 833], the mere fact that Soares observed the Beruman car does not in itself invoke the doctrine, since a party is not in a position of danger throughout his approach, and it is not until such time as he cannot extricate himself that the doctrine applies. The question on which the applicability of the doctrine depends is whether Soares had a last clear chance to avoid the accident when he observed the car 50-100 feet away. In answering this question several principles must be kept in mind. First, the chance to avoid the collision must have been clear; last clear chance does not mean possible chance, or bare chance, but clear chance (*Berton* v. *Cochran*, 81 Cal.App.2d 776 [185 P.2d 349]; *Dalley* v. *Williams*, 73 Cal.App.2d 427 [166 P.2d 595]; *Poncino* v. *Reid-Murdock & Co.*, 136 Cal.App. 223 [28 P.2d 932]). Secondly, under the most favorable realistic view of the evidence only a few seconds elapsed between the seeing and impact. The doctrine of last clear chance does not apply to splitting of seconds; when the emergency arises and there is no substantial evidence that the defendant had

time to avoid the collision, the doctrine of last clear chance does not apply (*Hickambottom* v. *Cooper Transportation Co.,* 163 Cal.App.2d 489 [329 P.2d 609]; *Hall* v. *Atchison T. & S.F. Ry. Co.,* 152 Cal.App.2d 80 [312 P.2d 739]; *Wilson* v. *Knudsen Creamery Co.,* 137 Cal.App.2d 552 [290 P.2d 677]; *Mehling* v. *Zigman,* 116 Cal.App.2d 729 [254 P.2d 141]; *Berton* v. *Cochran, supra; Poncino* v. *Reid-Murdock & Co., supra).* ▮ There is no substantial evidence here that respondent had time to avoid the collision.

▮ Appellant further complains that the jury was not instructed that the defense of contributory negligence applied only to the respondent Beruman. This contention is based on the fact that the court told the jury: "The instructions which I am about to give you concerning the law of negligence have no application in connection with the case of defendant JOSE GARCIA BERUMAN." Read in its proper context, the above was correct as the court was instructing the jury that under section 17158 of the Vehicle Code, the decedent, as a guest, could recover from Beruman only for wilful misconduct or intoxication and the jury was properly so instructed. The record also indicates that the court instructed the jury: "The issue of contributory negligence of the decedent has been raised by the answer of defendant filed in this action." Although the "defendant" was not identified thereafter whenever the word was used in the singular, it was clear that the instructions could only refer to Beruman. The jury was properly instructed to decide whether the decedent acted prudently in riding with Beruman after the latter had been drinking. Considering the instructions as a whole and the fact that only Beruman's counsel referred to contributory negligence, we do not think the jury was misled (*McChristian* v. *Popkin,* 75 Cal.App.2d 249 [171 P.2d 85]).

Judgment affirmed.

Shoemaker, J., and Agee, J., concurred.