[Civ. No. 18694.   First Dist., Div. One.   Feb. 3, 1960.]

GEORGE REX WARREN, Appellant, v. FRED C. UBUNGEN, Respondent.

Harry Bamford and Johnson, Thorne, Speed & Bamford for Appellant.

Norman S. Menifee for Respondent.

BRAY, P. J.—The sole question raised upon this appeal by plaintiff on a settled statement from a judgment based on a jury verdict in favor of defendant is whether or not the jury should have been instructed on last clear chance.

### EVIDENCE

The accident took place in daylight near the intersection of Pulgas Avenue and United States Highway 101 (Bayshore) in East Palo Alto. Bayshore then was not a freeway but consisted of four lanes, the two northbound lanes being separated from the southbound by a double white line. Bayshore runs generally north and south and is straight. Pulgas, two lanes wide, enters Bayshore from the east and terminates there. It enters at an oblique angle running in a generally southwest-northeast direction. A stop sign controls entry from Pulgas. Traffic was heavy.

Plaintiff testified that he was operating a motorcycle with a friend riding behind him on a homemade buddy seat. As plaintiff approached Bayshore on Pulgas he intended to turn left and go south. This would require him to cross the northbound lanes of Bayshore. Approaching the stop line he saw that because of traffic he would not be able to traverse the intersection immediately. To avoid being in the dangerous position of being ''picked off'' by southbound Bayshore traffic turning the acute angle onto Pulgas, he decided to proceed south on the east shoulder of Bayshore to a point just south of the intersection and wait for a break in traffic. The shoulder at this point is improved and hard surfaced for several feet off the highway proper, and then is dirt and gravel for a considerable width beyond. He moved the motorcycle slowly down the graveled portion until he got approximately 20 feet south of the intersection. He stopped about 8 feet off or east of Bayshore itself. He waited one or two minutes for traffic to clear so he could cross the northbound lanes and enter

the stream of southbound traffic. He became aware of defendant's station wagon as an identifiable vehicle when it was from three to five car lengths away (in his deposition he said around 20 to 25 feet). Defendant's car was then partly on and partly off the highway headed in a collision course for him. Plaintiff immediately engaged the clutch of his motorcycle and "laid it over" in an attempt to get out of defendant's way. In the last second before the collision, his motorcycle was travelling in a generally southerly direction along the shoulder. Defendant changed his course as if to get back on the highway. The motorcycle collided with the car at approximately the rear door.

Defendant testified that he was proceeding north entirely in the right or slow lane of Bayshore at about 35 miles per hour. He saw plaintiff's motorcycle as it approached Bayshore on Pulgas. It came to a momentary stop in the normal position there. He saw it at all times until it passed his car on the right. As it came southerly it was erratic and weaving. It was travelling right on the "edge" of the highway. He also said it was travelling 2 to 3 feet off the highway. He was about in the middle of his lane. He did not change his course or enter the number 2 or fast northbound lane. He did not sound his horn or give any other warning. He was first aware of the collision when his wife told him the motorcycle had struck the station wagon. His estimates as to time and distance from the moment he first saw the motorcycle on Pulgas until the collision were 75 feet, 2 minutes, and half a block. There was no hard surfaced or improved shoulder at all. The dirt and gravel part began immediately where the paved highway stopped.

The main conflict in the testimony of the plaintiff and defendant was whether defendant was in the right lane or partly on and partly off the highway at the time of the collision.

## LAST CLEAR CHANCE*

■ The doctrine is an exception to, or modification of, the ordinary rules making plaintiff's contributory negligence a bar to recovery. (*Garibaldi* v. *Borchers Bros.* (1957), 48 Cal.2d 283, 290 [309 P.2d 23].) ■ "The doctrine of last clear chance may be invoked if, and only if, the trier of the

---

*The instruction offered by plaintiff was in language approved in *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, 743 [306 P.2d 432], and hence was a proper one if the circumstances required instruction on last clear chance.

facts finds from the evidence: (1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.'' (*Brandelius* v. *City & County of San Francisco, supra*, 47 Cal.2d at p. 743.)

It is prejudicial error to refuse to instruct on last clear chance, when applicable, as the court must instruct on every theory finding support in the evidence. (*Sills* v. *Los Angeles Transit Lines* (1953), 40 Cal.2d 630, 640 [255 P.2d 795].)

On appeal, in determining whether an instruction on the doctrine should have been given, the evidence is viewed most favorably to the contention that the doctrine is applicable. (*Durkee* v. *Atchison, T. & S. F. Ry. Co.* (1958), 159 Cal.App.2d 615, 620 [324 P.2d 91].) However, the doctrine is inapplicable if but one element is lacking. (*Clarida* v. *Aguirre* (1957), 156 Cal.App.2d 112, 115 [319 P.2d 20].)

Applying these rules, it appears that the court properly refused to give the instruction. Taking the evidence most strongly in favor of the plaintiff, and disregarding contrary evidence, it appears that the jury could have found, if it believed plaintiff, that defendant's station wagon was proceeding up Bayshore partly on and partly off the highway, that plaintiff's motorcycle was on the graveled portion of the highway, that defendant saw it coming towards him weaving and erratic, that defendant just before the collision turned diagonally to avoid striking the motorcycle. A portion of element number (1) set forth in the Brandelius case was present, namely, that plaintiff was in a position of danger, on the shoulder of a heavily traveled highway. As to the other portion of the element it was not physically impossible for him to escape from his position by the use of ordinary care. Moreover, it was not impossible because of lack of awareness of his danger. Plaintiff saw defendant's car coming and recognized the danger when he was far enough away to start his motorcycle and proceed in a southerly direction before the

collision. Thus through the exercise of ordinary care he could have left the shoulder where he claims he was. Instead, under his own testimony, he proceeded straight ahead and struck the right rear of defendant's car which according to plaintiff's testimony was trying to get out of his way. (2) The second element of the doctrine is not present here. Defendant, who was driving partly on the shoulder, saw plaintiff coming towards him also on the shoulder weaving erratically for some distance. Defendant should have known from those facts that plaintiff was in a position of danger. However, those facts alone were not such as to require that defendant in the exercise of ordinary care should have known that plaintiff using ordinary care could not have avoided the accident. Moreover, it must be remembered that in order to apply the doctrine in this case we must disregard defendant's testimony (which apparently the jury believed) and find that plaintiff until defendant was 20 to 25 feet away was stopped and then started up his motorcycle. While in determining whether the doctrine applies we possibly may disregard any portion of plaintiff's testimony which is adverse to him in determining whether there is any evidence to require its application, here the combination of his testimony with the fact that the station wagon was struck by the motorcycle after the former had nearly completely passed the latter, indicates that the last clear chance was that of plaintiff rather than that of defendant. Defendant had no reason to know that plaintiff could not avoid the accident.

Under defendant's testimony there is ·no evidence from which it could be inferred that defendant knew or should have known that plaintiff was unable to escape. Defendant was in the middle of his lane and saw plaintiff weaving at the edge or 2 to 3 feet off the highway. That fact was not enough to furnish a basis for an inference that defendant knew or should have known that plaintiff proceeding in daylight on a shoulder against the flow of traffic on a busy highway was unaware that he was so close to the highway and would after most of defendant's car had passed plaintiff veer on the highway and strike it. The third element does not come into play, namely, that defendant had the last clear chance.

The situation in *Peterson* v. *Burkhalter*, 38 Cal.2d 107 [237 P.2d 977], is in nowise similar to that in this case. There there was evidence that the defendant knew that the plaintiff on his motor scooter was coming into the intersection at approximately 30 miles an hour and looking in the opposite

direction from which he was travelling, and that the defendant took the chance of getting across the intersection ahead of plaintiff. There the court held that by reason of those facts the defendant should have realized that the plaintiff was going to cross his path unaware of the danger. In our case, even though plaintiff was weaving off of the highway, there was nothing to indicate to defendant that plaintiff would not exercise his clear chance to avoid striking defendant's car from the side.

The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.

A petition for a rehearing was denied March 1, 1960, and appellant's petition for a hearing by the Supreme Court was denied March 30, 1960. Peters, J., was of the opinion that the petition should be granted.