[Civ. No. 19659. First Dist., Div. One. Sept. 11, 1962.]

DONALD I. MILLER, JR., a Minor, etc., et al., Plaintiffs and Appellants, v. WESTERN PACIFIC RAILROAD COMPANY, Defendant and Respondent.

584

Leo Fried for Plaintiffs and Appellants.

John W. Martin, G. Blandin Colburn, Jr., Richard H. Bailin and Dunne, Dunne & Phelps for Defendant and Respondent.

MOLINARI, J.—This is an appeal from a judgment on a jury verdict for defendant and respondent, the Western Pacific Railroad Company, in an action arising out of a railroad crossing collision between respondent's freight train and an automobile operated by a 17-year-old driver and containing five teen-aged passengers. The action is for personal injuries to two of said passengers, appellants Donald I. Miller, Jr. (hereinafter referred to as Donald), and Jeannie Frances Miller Marchello (hereinafter referred to as Jeannie), and for the death of a third passenger, Linda Sue Whitsell, whose mother is the appellant Sadie Troxel. The driver of the automobile and the remaining two passengers are not parties to this action nor did they testify at the trial. The pertinent facts are as follows.

The accident occurred on October 28, 1957, shortly after 9 p. m., at the crossing of Lathrop Road and the respondent's Stockton to Oakland railroad line near Lathrop, San Joaquin County, California. The automobile was travelling from east

to west and the train was proceeding from north to south. The automobile was being driven by Raymond Tinnin. Jeannie, aged 16 years, was sitting in the front seat of said car between Tinnin and the decedent, Linda Sue Whitsell, aged 14½ years. Donald, aged 15 years, was sitting in the back seat between the other two passengers. The train was operated by John G. Trow, acting as engineer, and Vernon C. Brain, in the capacity of fireman. The former was on the right side of the diesel locomotive consisting of three units which were pulling 38 cars. The latter, whose duty it was to act as observer, sat on the left side of the locomotive. This was the side from which the automobile was approaching the crossing. The train was operating on a regular run from Stockton to Oakland. There was no "wigwag" signal, nor any watchman, gate or lights at the crossing. There was, however, a railroad crossbar sign and painted white lines across the road at the crossing. On the right hand side of the road, 525 feet from the crossing and facing the approaching automobile, there was located an "advance reflector" railroad crossing sign. The occupants of the automobile had been to a Civil Air Patrol meeting, 9 miles from Lathrop, and were returning to their homes. Jeannie and Donald had been attending these meetings for at least a year, driving with Tinnin, and Linda Sue had been driving to these meetings with Tinnin for at least half a year.

Jeannie testified that she had driven over this crossing with Tinnin on numerous occasions. Jeannie testified on direct examination that the windows of the automobile were rolled up, but on cross-examination she stated she didn't remember whether the windows were up. She also testified: that she couldn't remember whether the car radio was playing or whether there was any conversation between the passengers; that it was a chilly night and "pitch black"; that she was looking straight ahead; that she did not see any moving lights, but saw the Sharpe General Depot lights some distance to the north; that she remembered the driver looking to the right; that she did not hear any whistle or bell; that she did not know the speed at which the automobile was being driven but that it was not going fast; that there was no slowing down or swerving of the automobile, and no screeching of brakes; that she saw the locomotive "[a]t the very split second of the impact" and that she didn't recall anything about the accident "except something hitting us."

Donald testified: that he didn't remember whether the windows were up, but that they probably were because it was

cold; that he didn't remember whether the radio was playing, but that he believed it had been turned off before the accident because of static; that he was talking to one of the passengers in the back seat; that he didn't hear any whistle or bell; that he didn't see the train or the crossing; that he didn't remember the accident, but recalled "coming to" at the hospital.

No evidence was presented as to the conduct or actions of the decedent, Linda Sue Whitsell, except that she was sitting in the front seat to the right of Jeannie.

Officer William E. Roche of the California Highway Patrol testified: that there were no skid marks at the crossing, but that there was a tire abrasion mark 2 feet east of the railroad track and 2 feet north of the center line of the highway; that it was a clear night; that the area of the crossing is an open and unobstructed area; that the automobile was travelling between 41 and 50 miles per hour; that the train was travelling approximately 25 miles per hour; that the " 'whistle was blown for the crossing, and it was also blowing specially for the vehicle that was coming down the road.' "

Brain testified: that at a distance of 1,400 feet from the crossing his visibility of the crossing was good; that he could then see 2,000 feet down the road; that at 1,300 feet from the crossing he could see the headlights of a car "a great distance" from the crossing; that the train had not travelled over 50 miles per hour; that he was slowing down for a Southern Pacific interlock beyond the crossing where the speed was restricted to 20 miles per hour; that he didn't pay any attention to the car from the time he first saw its headlights until "we were about four to five boxcar lengths from the crossing"; that a boxcar is about 50 feet long; that at this time the automobile was from 400 to 500 feet from the crossing; that he could only see the automobile's headlights; that there was nothing to indicate that it would not come to a stop; that its speed was not excessive or unusual; that the whistle was then blowing; that he assumed the driver of the car could hear and sée; that he first told the engineer that there was an automobile "when we were four to five boxcar lengths from the crossing," when he told him to "hold the whistle"; that the automobile was then 200 to 300 feet from the crossing; that at this point an emergency application of the brakes would not have reduced the speed of the train to a measurable degree prior to its reaching the crossing; that he first determined that there was going to be an accident when he was about one boxcar length from the crossing, at which time the

automobile was about the same distance from the crossing; that he didn't tell the engineer to "plug the train" (*i.e.*, emergency application of the brakes) until the actual moment of impact; that the engineer "plugged it" just about the time the automobile hit the engine; that the automobile collided with the left side of the engine about 4 to 5 feet from its front end with a "loud crash"; that the train was travelling at a speed of 25 miles per hour at the moment of the collision; that the front of the engine came to a stop about 800 feet beyond the crossing; and that at no time could he see the driver of the automobile.

Trow testified: that he was handling the whistle, brake lever and other controls; that at a point one mile from the Southern Pacific interlock crossing the train was going about 50 miles per hour; that at the "whistle board," 1,397 feet north of the crossing, he turned on the engine bell which continues to ring until it is turned off and that he blew the whistle; that he could not see the area on the left side of the train; that he never saw the automobile at any time; that Brain first told him that an automobile "was coming" when he was "about three car lengths from the crossing"; that he then had his hand on the whistle and kept the whistle blowing; that he was told to "plug" the train at the moment of impact when he went into full emergency; and that at the time of the accident the train was going about 25 miles per hour.

There was also testimony to the effect that the engine was illumined by a stationary headlight 16 inches in diameter situated in the front of the engine about 11 feet from the rail; that the headlight was on the "bright" position; and that there were other lights on the diesel units consisting of number lights on each side of the front end of the engine; a running light under each side of the cab; and the engine room lights "which shine out from the portholes." There was also testimony that the engine was equipped with an instrument which recorded the speed of the train on a tape. This tape was read at the trial by the respondent's assistant roadmaster. It indicated that the train decelerated from 50 miles, at a point four-tenths of a mile from the crossing to 25 miles per hour at the point of the collision.

The appellants assert three assignments of error on the part of the trial court: (1) That the trial court instructed the jury on contributory negligence when the record contained no evidence of any contributory negligence on the part of the appellant passengers; (2) that the trial court improperly re-

fused to give an instruction on the doctrine of last clear chance; and (3) that the trial court, during the trial, made improper remarks which constituted prejudicial misconduct.

The trial court gave several instructions which properly defined negligence and contributory negligence, and in addition gave the following particular instructions on contributory negligence, to wit:

"The passengers in the automobile were under a continuing duty to exercise reasonable care for their own safety at all times. There is nothing in any of the circumstances of this case which suspended that duty or relieved them from performing it or excused a violation of it, if any. The defendant owed to none of them any higher duty to look out for their safety than such persons owed to look out for their own safety, for the degree of care was the same, and each was under a duty to exercise reasonable care. If the passengers failed to perform this duty and exercise such care, they were guilty of negligence; and if that negligence proximately contributed to their injury or death, no recovery can be had on account of that injury or death."

"A railroad locomotive which is in plain view operating along a railroad track and toward a highway crossing at grade is itself a warning of danger without any other sign or signal or warning, and any person in an automobile approaching the crossing, whether driver or passenger, is under a duty to exercise reasonable care to observe and heed that warning, whether other warnings or signals are given or not."

## Contributory Negligence

The appellants contend that "[t]here is not a shred of evidence that any of the plaintiffs in this case was guilty of even the slightest negligence" which contributed to or proximately caused the accident, and that accordingly the giving of contributory negligence instructions was prejudicial. ▌▌ It is, of course, elementary that if there is no evidence at all to warrant the instruction it is error to give it. (*Maynard* v. *Walker,* 175 Cal.App.2d 145, 148 [345 P.2d 478]; *Sheppard* v. *City of Los Angeles,* 172 Cal.App.2d 338, 342 [342 P.2d 282].) On the other hand, if, upon a consideration of the testimony in a light most favorable to the respondent, the record reveals " 'slight or, at least, some evidence upon the issue' " the giving of the instruction is not erroneous. (*Washington* v. *City & County of San Francisco,* 123 Cal.App.2d 235, 238 [266 P.2d 828]; *MacLean* v. *City & County of San Francisco,* 151 Cal.App.2d 133, 138 [311 P.2d 158]; *Maynard*

v. *Walker, supra,* 175 Cal.App.2d 145.) We now must turn to the record to ascertain whether there is some evidence on the issue of contributory negligence to warrant the instruction. In doing so we must, in the first instance, ascertain the rights and duties of passengers in a vehicle approaching a railroad crossing.

In *Pobor* v. *Western Pac. R. R. Co.,* 55 Cal.2d 314 [11 Cal.Rptr. 106, 359 P.2d 474] the law is stated as follows: "Even when negligence of a driver may not be imputed to him, the passenger is bound to exercise ordinary care for his own safety. He may not shut his eyes to an obvious danger; he may not blindly rely on the driver in approaching a place of danger. He is normally bound to protest against actual negligence or recklessness of the driver, the extent of his duty in this regard depending upon the particular circumstances of each case and ordinarily being a question of fact for the jury. (*Parker* v. *Southern Pac. Co.,* 204 Cal. 609, 615 [269 P. 622]; *Miller* v. *Atchison, T. & S.F. Ry. Co.,* 166 Cal. App.2d 160, 170 [332 P.2d 746]; *Thomas* v. *Irvin,* 96 Cal. App.2d 816, 819 [216 P.2d 476]; *Martindale* v. *Atchison, T. & S.F. Ry. Co., supra,* 89 Cal.App.2d 400, 409 [201 P.2d 48].)

If the rider is aware that the driver is not looking for trains or is driving the vehicle in a negligent manner or is violating the law, or that an engine, car, or train is approaching on the tracks and is so close as to constitute an immediate hazard to those in the vehicle, he has the duty of doing whatever a person of ordinary prudence in the same situation would do to inform or warn the driver in an effort to prevent an accident. (Cf. *Cate* v. *Fresno Traction Co.,* 213 Cal. 190, 201 [2 P.2d 364].) It is only when the passenger is unaware that the driver is carelessly rushing into danger that there is not at least a question of fact as to his duty to protest. (*Thompson* v. *Los Angeles etc. Ry. Co.,* 165 Cal. 748, 753 [134 P. 709]; *Gadbury* v. *Ray,* 171 Cal.App.2d 150, 155 [340 P.2d 66].)'' (P. 324.) (And see *Coe* v. *Southern Pac. Co.,* 203 Cal.App.2d 509 [21 Cal.Rptr. 731].)

The questions presented here are as follows: Did the passengers shut their eyes to an obvious danger? Did they blindly rely on the driver in approaching a place of danger? Were the passengers aware that Tinnin was driving the vehicle in a negligent or reckless manner? (The appellants concede that Tinnin was negligent.) Unless we are compelled as a matter of law to answer all of these questions in the negative, the submission of the issue of contributory negligence to the jury

was proper. ▮▮ Whenever there is room for an honest difference of opinion between men of average intelligence, the question of negligence or contributory negligence becomes a question of fact for the jury. (*Hudson* v. *Rainville*, 46 Cal.2d 474, 478 [297 P.2d 434] ; *Salomon* v. *Meyer*, 1 Cal.2d 11, 15 [32 P.2d 631].) ▮▮ In 35 California Jurisprudence Second the rule is stated as follows : "Theoretically, contributory negligence is a question of mixed fact and law, but it is ordinarily considered a question of fact. It becomes a question of law only where the court is justified in determining that but one inference can reasonably be drawn from the evidence or from the uncontradicted facts." (§ 244, pp. 783-784; footnotes omitted.) ▮▮ And in *Phillips* v. *G. L. Truman Excavation Co.*, 55 Cal.2d 801 [13 Cal.Rptr. 401, 362 P.2d 33] the rule is stated thusly : "Where the evidence on the issue of contributory negligence is conflicting, and would support a finding either way, the question is one of fact and not of law, and must be decided by the trier of the facts [citations]." (P. 806.)

▮▮ A guest or passenger in an automobile is bound to use reasonable care for his own safety, and whether he has exercised such care is ordinarily a question for the determination of the jury dependent upon the circumstances of the particular case. (*Miller* v. *Peters*, 37 Cal.2d 89, 94 [230 P.2d 803] ; *Martindale* v. *Atchison, T. & S.F. Ry. Co.*, 89 Cal.App.2d 400, 408 [201 P.2d 48] ; *Miller* v. *Atchison, T. & S.F. Ry. Co.*, 166 Cal. App.2d 160, 170 [332 P.2d 746].) ▮▮ Accordingly, he may, under the particular circumstances of the case, be bound to remonstrate or protest against the actual negligence or recklessness of the driver. (*Miller* v. *Peters, supra*; *Martindale* v. *Atchison, T. & S.F. Ry. Co., supra*; *Miller* v. *Atchison, T. & S.F. Ry. Co., supra*; *Wagner* v. *Atchison etc. Ry. Co.*, 210 Cal. 526, 528 [292 P. 645] ; *Howard* v. *Alta Chevrolet Co.*, 111 Cal.App.2d 38, 44 [243 P.2d 804] ; *Marchetti* v. *Southern Pac. Co.*, 204 Cal. 679, 683 [269 P. 529] ; *Queirolo* v. *Pacific Gas & Electric Co.*, 114 Cal.App. 610, 615 [300 P. 487].)

▮▮ In *Parker* v. *Southern Pac. Co.*, 204 Cal. 609 [269 P. 622], cited with approval by the *Pobor* case, the court said : "It is the settled law of this state that an approach to a railroad crossing is in itself a warning of danger of which the traveler is bound to take notice. [Citations.]" (P. 614.) (And see *Thomas* v. *Irvin*, 96 Cal.App.2d 816 [216 P.2d 476] ; *Miller* v. *Atchison, T. & S.F. Ry. Co., supra*, 166 Cal.App.2d 160 ; *Gadbury* v. *Ray*, 171 Cal.App.2d 150, 157 [340 P.2d 66].)

In *Young* v. *Southern Pac. Co.*, 189 Cal. 746 [210 P. 259] the court said: "The law presumes that a person possessing normal faculties of sight and hearing must have seen and heard that which was within the range of his sight and hearing." (P. 754.) While the "Looking and Not Seeing" instruction has been criticized in a number of cases as being argumentative and truismatic (see BAJI Instruction No. 140 and cases cited), the presumption declared by the *Young* case has not been repudiated by subsequent cases. (See *Cate* v. *Fresno Traction Co.*, 213 Cal. 190 [2 P.2d 364]; *Martindale* v. *Atchison, T. & S.F. Ry. Co., supra*, 89 Cal.App.2d 400; *Miller* v. *Atchison, T. & S.F. Ry. Co, supra*, 166 Cal.App.2d 160.) In *Martindale* and *Miller* we have a reiteration of the proposition that it was a question for the jury to determine whether the passengers should have seen or heard the train in time to have warned the driver.

In *Miller* v. *Peters, supra*, 37 Cal.2d 89, the court determined that factors in the evidence relating to the speed of the automobile and the manner in which it was being driven immediately prior to the accident would justify submitting to the jury the matter of the passenger's personal contributory negligence although the passenger did not see the bus with which the automobile collided and although the passenger was not aware of the danger of a collision and had no time in which to make an effective protest.

In *Martindale* v. *Atchison, T. & S.F. Ry. Co., supra*, 89 Cal. App.2d 400, a railroad crossing case wherein the driver and a guest were killed and the other guest was injured, there was no direct evidence as to their conduct prior to the accident, yet the court (hearing denied by the Supreme Court) held that there were sufficient inferences of contributory negligence justifying the court in submitting that issue under proper instructions. The court there made reference to the presumption that a person possessing normal faculties of sight and hearing must have seen and heard that which was within the range of his sight and hearing, and accordingly held that it was for the jury to determine whether the passengers should have seen or heard the train in time to have warned the driver. The facts there were somewhat similar to those in the instant case. There were no lights at the crossing, no flasher signal, wigwag, bell or gate. The warnings for the crossing consisted of two standard railroad crossarms, a round reflectorized disc about 18 inches in diameter, with the letters " 'RR' " placed 9 feet east of the paved portion of the

street and 467 feet south of the crossing, a white sign painted on the pavement with a cross and an " 'R' " 362 feet south of the crossing, and two white lines painted on the pavement 6 feet on either side of the railroad track, each of which extended across the lanes of traffic. (P. 405.) The accident occurred on a clear but dark night, there being no moon. The engineer blew the whistle for the crossing and had the engine bell on the automatic ringer at the time of crossing the street. There was a bright headlight on the front of the engine and several other lights on the engine, tender and the caboose. The headlight was visible for a considerable distance before the locomotive passed over the crossing. The train consisted of a locomotive, tender and 75 cars moving at a speed variously estimated from 25 to 40 miles an hour. The automobile struck the 28th car counting from the locomotive. The three men involved in the accident had travelled to and from work along this crossing for some time previously. The surviving passenger had no recollection of the accident and knew nothing until he awakened at the hospital. There were no eyewitnesses to the accident.

In *Miller* v. *Atchison, T. & S.F. Ry. Co., supra,* 166 Cal. App.2d 160, another railroad crossing collision case with facts also much similar to those here, the court concluded that the question of the contributory negligence of the passengers should have been left to the jury under proper instructions. There the accident occurred at 10 p. m. on a clear, cold, dry and dark night. The intersection was formed by a right-angle crossing of a single track and an asphalt roadway approximately 82 feet wide at the crossing. While a residence obscured the vision of an automobile approaching the train, to some extent, the headlight of the train could be seen 200 to 250 feet from the road when the automobile was 70 to 80 feet from the tracks. There was no automatic signalling device, but a cross-buck type of railroad sign, which was reflectorized, was located at the crossing. There was also a railroad warning sign painted upon the pavement and a vertical warning sign planted within a block of the tracks. Two illuminated street lights were suspended over the crossing. The train consisted of 21 freight cars and was approaching the intersection at about 25 to 28 miles per hour. At a whistle post 1,400 feet from the crossing a whistle was sounded and the automatic bell was set and it continued to ring until after the accident. The whistle was thereafter blown on several occasions before reaching the crossing. The

four occupants, including the driver, were all young people. All of them, with the possible exception of one of the passengers, admitted familiarity with the crossing.

The applicability of contributory negligence instructions in a railroad crossing case in the light of the *Pobor* case was recently considered by *Coe* v. *Southern Pac. Co., supra,* 203 Cal.App.2d 509. The court there stated: "There was evidence from which the jury could have found plaintiff guilty of contributory negligence. Plaintiff was seated in the front seat of the car talking to the driver. She was a licensed automobile driver, had normal sight and hearing, was familiar with the crossing and its signals, driving over it three or four times a week. She necessarily knew that there were two tracks. She was sitting on the right side of the car, the side from which the engine with its headlight shining was approaching. She had a clear view up the track for approximately 400 feet; the wigwag was operating. There was evidence that the engine's whistle was blowing. There was ample time for her to have warned Mrs. Winther to stop anytime after the latter pulled out from behind the stopped cars until she had crossed the first track. All this, opposed to the presumption that she used due care, did not compel a finding of contributory negligence, but would have supported such a conclusion. Therefore, the court could not instruct as a matter of law that there was no evidence of contributory negligence. Hence the court did not err in refusing the proposed instruction that there was no evidence of contributory negligence. . . . Assuming a similar showing at the retrial, instructions on contributory negligence should be given." (Pp. 520-521.)

An analysis of the facts of the instant case in the light of the foregoing principles discloses the following: All of the three young people involved in this appeal lived in Lathrop, and while only Jeannie testified that she had driven over this crossing on numerous occasions, the jury could infer, not only that Jeannie had knowledge of the crossing, but that the other two had such knowledge from the fact that they had driven to and from the Civil Air Patrol meetings with Tinnin weekly for a considerable period of time. The occupants of the car had a clear and unobstructed view in the direction from which the train came during the last 2,000 feet of their approach to the crossing at least as far as 1,300 feet up the track. The engine was lit as hereinbefore described, which lights were in motion, and its whistle was blowing and its bell was sounding. At the crossing were the cross-bar and

painted lines, and 525 feet from the crossing was the reflector sign. Jeannie was looking straight ahead and did see the stationary depot lights to the right. These circumstances, we conclude, were sufficient to warrant the submission of the issue of contributory negligence to the jury. We also have, however, the additional circumstances of the closed windows in the automobile and the playing of the radio. There was sufficient evidence from which the jury could infer that the windows were closed and that the radio was playing. These circumstances, when coupled with the knowledge of the passengers that they were approaching a railroad crossing where it would be incumbent upon the driver to look and listen for trains, present a question of fact concerning the conduct of the driver and the necessity to remonstrate with him to lower the window, at least on the driver's side, and to shut the radio off in order to facilitate the hearing of train noises. It is a matter of common knowledge that when the windows of an automobile are closed, with the motor running and a radio playing, noises from the outside are shut out and cut off. In *Smith* v. *Cantlay & Tanzola, Inc.*, 83 Cal.App.2d 689, 692 [189 P.2d 542], the court held that the circumstance of the passenger-plaintiff riding in a car with the windows on a very foggy morning, at a speed of 20 to 25 miles an hour, without "making any comment with respect to the weather conditions and the possibility of danger at the top of the pass, since plaintiff was familiar with the condition of the highway at that point," warranted the submission of the said plaintiff's claimed negligence as a question of fact for the jury.

The appellants rely on *Marchetti* v. *Southern Pac. Co.*, *supra*, 204 Cal. 679; *Lininger* v. *San Francisco etc. R.R. Co.*, 18 Cal.App. 411 [123 P. 235]; *Cate* v. *Fresno Traction Co.*, *supra*, 213 Cal. 190; and *Klein* v. *Southern Pac. Co.*, 203 Cal.App.2d 72 [21 Cal.Rptr. 233], in support of their contention that the issue of contributory negligence should not have been submitted to the jury. Their argument turns upon the assertion that none of the occupants of the car were in fact aware of the approaching train and that therefore the passengers were immune from a finding of contributory negligence. None of the cases cited by appellants are in conflict with the principles hereinbefore alluded to.

Actually *Marchetti* and *Lininger* both support the proposition that ordinarily contributory negligence is a question of fact. The essence of these cases is that it was error for the

trial court to have granted a nonsuit which was tantamount to declaring that the automobile passenger was guilty of contributory negligence as a matter of law. In *Marchetti* the trial court held that the failure of the passenger, who was looking straight ahead, to look to his left for an approaching train constituted negligence as a matter of law. In *Lininger* it was held that the following circumstances negated negligence as a matter of law, to wit: The passenger was sitting on the back seat of the automobile; she knew nothing about the operation of automobiles; she knew nothing about the city in which the accident occurred, never having been there before; she did not remember seeing or hearing the defendant's electric car; that she said nothing to the driver about the manner of his driving the automobile; and that she could not recall the immediate circumstances surrounding the accident.

The *Klein* case quotes the following language from the *Marchetti* case, to wit: " 'A passenger in a motor vehicle approaching a railway crossing is under no legal obligation to warn the driver, either of the presence of the tracks or of an approaching train, the view being unobstructed and the driver reasonably competent and vigilant. . . . The passenger has a right to suppose that the driver, on approaching a railroad crossing with which he is familiar, will exercise due care for the protection and safety of his passengers, and that even when so near the crossing as to be in apparent danger of collision with an oncoming train he will or may take some action which will avert an accident.' " (P. 79.) This is only a portion, however, of the entire statement made by *Marchetti* which went on to say: "Nevertheless, it has been said that the passenger must look out for himself, and may not, in a place of danger, as on approaching a railway crossing, rely blindly on the driver. But a passenger in a machine operated by another cannot be said as a matter of law to have been negligent in not calling the chauffeur's attention to a danger of a collision." (P. 683.) The statement in *Marchetti* was taken in its entirety from 3 California Jurisprudence. (§ 84, pp. 853-854 (citing cases).) It is interesting to note that said statement as there couched was not repeated in the second edition of California Jurisprudence. Nor was *Marchetti* mentioned or cited in *Pobor*. In any event, *Marchetti*, which turned primarily on the question of contributory negligence as a matter of law, is not entirely in conflict with *Pobor* but must be reconciled with it. A close reading of *Klein*, however,

discloses a recognition of the principles hereinabove mentioned and upon which we rely. The court says: ''While it is true that under some circumstances a guest passenger may have an affirmative duty to alert the driver (see *Tice* v. *Pacific Elec. Ry. Co.*, 36 Cal.App.2d 66 [96 P.2d 1022, 97 P.2d 844]; *Martindale* v. *Atchison, T. & S.F. Ry. Co.*, 89 Cal.App.2d 400 [201 P2d 48]) the mere fact that either of the appellants might have known that she was approaching a railroad track is not sufficient to require her 'to ascertain if a train was approaching.' '' (P. 79.)

The crux of *Klein* is that it strikes down an instruction which contained the last quoted language and which told the jury in effect that if the appellants failed to ascertain if a train was approaching they were negligent. *Klein* relies upon *Robinson* v. *Cable*, 55 Cal.2d 425 [11 Cal.Rptr. 377, 359 P.2d 929], where the court stated: *''In the absence of some fact brought to his attention which would cause a person of ordinary prudence to act otherwise,* a person riding in an automobile is not charged with the responsibility of observing the condition of the traffic on the highway, and his mere failure to do so, *without more,* will not support a finding of contributory negligence.'' (Pp. 427-428; emphasis added.) In applying this rule, *Klein* said: ''In the instant case, *the only possible fact* would be knowledge that the automobile was approaching the railroad track. The *mere fact* that an automobile is approaching a railroad track does not place a burden on a guest passenger to ascertain whether or not a train is approaching.'' (P. 79; emphasis added.)

*Cate* v. *Fresno Traction Co., supra,* 213 Cal. 190, likewise affirms the statement that contributory negligence is a question for the jury. Appellants cite this case as authority for the principle that one unaware of impending danger cannot be guilty of contributory negligence. There is no such language in *Cate.* What the court therein said was that the jury was justified in finding that the passenger was not guilty of contributory negligence in failing to warn the driver of the presence of the streetcar where the passenger testified that she was not aware of its presence until just before the automobile collided with it. Moreover, we find this language in *Cate:* ''Deceased, therefore, had no reason to be apprehensive of her safety while riding with him or to take any unusual precaution against their running into danger. The most that can be said as to her responsibility in this regard is that if she observed anything which might tend to endanger

her safety, it was her duty to notify the driver of this danger in order that he might avoid it. Ordinary prudence for her own safety would require this. If she saw the street-car approaching the crossing in front of them, it was undoubtedly her duty to notify Bruce if she had reason to believe that he did not also see the car and might collide with it at the crossing at the rate of speed at which they were traveling.'' (P. 201.)

*Pobor* cites *Cate* with approval. Both cases hold in essence that the awareness of the passenger is a question of fact. ▮ It is only when the jury finds that the passenger was in fact unaware that the driver is carelessly rushing into danger that there is not at least a question of fact as to his duty to protest. (*Pobor* v. *Western Pac. R.R. Co., supra,* 55 Cal.2d 314; *Thompson* v. *Los Angeles etc. Ry. Co.,* 165 Cal. 748, 753 [134 P. 709].) (And see *Gadbury* v. *Ray, supra,* 171 Cal.App.2d 150, 157, where the court in discussing the subject of awareness took special cognizance of the factual situation which arises in railway crossings pertaining to notice of danger.) While it is true here that the testimony of the surviving passengers was to the effect that they were unaware of the approaching train and the collision until the moment of impact, and that there was no direct evidence that any of the passengers were so aware, such evidence is not conclusive. Whether they were in fact so aware or should have been aware under all of the circumstances hereinabove alluded to was a jury question.

The appellants invoke the statutory presumption that a person takes care of his own concerns (Code Civ. Proc., § 1963, subd. 4), and cite several cases wherein the presumption was applied, to wit: *Wahrenbrock* v. *Los Angeles Transit Lines,* 84 Cal.App.2d 236 [190 P.2d 272] ; *Dow* v. *Southern Pac. Co.,* 105 Cal.App. 378 [288 P. 89] ; *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 P. 529] ; *Fairchild* v. *Detroit G. H. & M. Ry. Co.,* 250 Mich. 252 [230 N.W. 167].) ▮ Assuming that the presumption is applicable here, these cases merely hold that the presumption precludes a finding that the party in whose favor the presumption is applied cannot be held to be negligent as a matter of law. But such a presumption is merely evidence in the case for the jury's consideration to be weighed and considered with other evidence in the case, and may be outweighed in convincing force by circumstantial evidence. (*Coe* v. *Southern Pacific Co., supra,* 203 Cal.App. 2d 509; *Laird* v. *T. W. Mather, Inc.,* 51 Cal.2d 210 [331 P.2d

617]; *Scott* v. *Burke,* 39 Cal.2d 388 [247 P.2d 313]; *Estate of Miller,* 143 Cal.App.2d 544 [299 P.2d 1005]; *Shirk* v. *Southern Pac. Co.,* 103 Cal.App.2d 97 [229 P.2d 100].) When a presumption is controverted by other evidence, direct or indirect, an issue of fact is raised which it is the duty of the trier of fact to determine as in other cases, and in determining this issue the presumption must be weighed against the conflicting evidence. (*Scott* v. *Burke, supra,* 39 Cal.2d 388, 398; *Gioldi* v. *Sartorio,* 119 Cal.App.2d 198, 203 [259 P.2d 62].)

Having concluded that it was proper to instruct on contributory negligence in the instant case, we must now consider whether the two particular instructions hereinbefore quoted were themselves correct statements of the law. The first instruction merely states that the passengers were under a continuing duty to exercise reasonable care for their own safety at all times and that if they failed to do so they were guilty of negligence which, if it proximately contributed to their injury or death, precluded recovery therefor. This instruction was followed by: ''Contributory negligence is such an act or omission on the part of the person injured or killed, amounting to want of ordinary care in the circumstances of the case as, concurring or cooperating with a negligent act of a defendant, was a proximate cause of the injury or death complained of.'' The court had previously defined negligence and ordinary care in the usual language.

All of these instructions when read together state the law as announced in the *Pobor* case and the other applicable authorities above cited. The other instruction to the effect that a railroad locomotive which is in plain view is itself a warning of danger which warning the passenger must, in the exercise of reasonable care, observe and heed, is likewise consistent with the duty set forth in *Pobor.* While such an instruction was argumentative in form, and therefore should not have been given, it was not prejudicial error to give it. Such an instruction is analogous to the "look and not see" instruction which some of the cases have criticized as argumentative, but none of which have held it to be reversible error to give. (See discussion in BAJI, 1962 Pocket Parts, Instruction No. 140, and cases there cited.) While superficially such an instruction appears to take for granted the visibility of the locomotive, it is merely an unnecessary declaration of the obvious. It is a truism that if one sees a locomotive approaching a crossing over which he is about to pass

he is warned of impending danger. The language "which is in plain view" when read with the language following it to the effect that the passenger "is under a duty to exercise reasonable care to observe and heed *that* warning" can be interpreted only as meaning that which was in plain sight of a person looking in the direction of an object clearly visible. (Emphasis added.) (See *Fabela* v. *Hargis,* 147 Cal. App.2d 809, 816 [305 P.2d 901].) Whether that person actually saw the object or should have seen it in the exercise of ordinary care was left to the jury. Under the circumstances of the case, including the facts and the remainder of the instructions, and in the light of our duty to adopt the construction and effect of an instruction which will support and not defeat the judgment if it is reasonably susceptible of such an interpretation, we conclude that this instruction was not prejudicial. (*Stout* v. *Southern Pac. R.R. Co.,* 127 Cal. App.2d 491, 497 [274 P.2d 194]; *Pandell* v. *Hischier,* 166 Cal. App.2d 693, 697 [333 P.2d 762].)

### Last Clear Chance

The form of the proposed instruction (BAJI 205, revised) is not in question. The claimed error is the trial court's refusal to instruct on the doctrine of last clear chance. The refusal to give a requested instruction thereon is error if there is any substantial evidence, conflicting or otherwise, in support of each of the elements essential to the application of the doctrine. In the absence of such evidence, it is error to so instruct. The existence or nonexistence of such evidence is a question of law the determination of which issue is premised upon the rule that the evidence is viewed most favorably to the contention that the doctrine is applicable. (*Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 486-487 [283 P.2d 1]; *Di Sandro* v. *Griffith,* 188 Cal.App.2d 428, 431-432 [10 Cal.Rptr. 595].)

The elements essential to the application of the doctrine are as follows: "(1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to

avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure." (*Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729, 743 [306 P.2d 432]; *Hildebrand* v. *Los Angeles Junction Ry. Co.*, 53 Cal.2d 826, 830 [3 Cal.Rptr. 313, 350 P.2d 65].)

 The doctrine is applied only in exceptional cases and ordinarily is not applied to intersection cases involving a collision between two moving vehicles and in cases involving collisions between moving vehicles and trains at railroad crossings. (*Rodabaugh* v. *Tekus*, 39 Cal.2d 290, 294 [246 P.2d 663]; *Todd* v. *Southern Pac. Co.*, 184 Cal.App.2d 376, 378 [7 Cal.Rptr. 448]; *Johnson* v. *Sacramento Northern Ry.*, 54 Cal.App.2d 528, 532 [129 P.2d 503].) The doctrine has been applied rarely in railroad crossing cases, and then ordinarily "in situations where a driver or pedestrian has placed himself, through his own negligence, *in, or in very close proximity to, the path* of an oncoming train . . . and is thereafter discovered in such position of danger by the operator of the oncoming train . . . in ample time for the latter to avoid the accident by the exercise of ordinary care." (*Johnson* v. *Sacramento Northern Ry., supra*, 54 Cal.App.2d 528, 532; emphasis added.) Thus the doctrine has been applied where an automobile was stalled on the tracks (*Chappell* v. *San Diego etc. Ry. Co.*, 201 Cal. 560 [258 P. 73]); where a pedestrian was standing between the double tracks (*Starck* v. *Pacific Electric Ry. Co.*, 172 Cal. 277 [156 P. 51, L.R.A. 1916E 58]); where deceased was engaged in a bicycle race and where spectators who lined the road and the railway tracks warned the motorman that the "racers were coming" (*Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 514, 520 [74 P. 15, 98 Am.St.Rep. 85, 63 L.R.A. 238]).

 The rationale of the cases which have considered the application of the doctrine hinges upon the time element as the most important factor. In order to fasten the responsibility of the doctrine upon the defendant he must *first* have both actual knowledge of the injured person's position of danger and actual or constructive knowledge that the injured person cannot escape from such situation. It is *then* and at the time that the defendant is charged with such knowledge that he is called upon to exercise both a last chance and a clear chance to avoid the accident. (*Brandelius* v. *City & County of San Francisco, supra*, 47 Cal.2d 729; *Todd* v. *Southern Pac. Co., supra*, 184 Cal.App.2d 376.) "That he should

have had the *last chance* implies that his chance to avoid the accident must have come later in point of time than any similar chance on the part of the injured person. That he should have had a *clear chance* implies that he must have had more than a *bare possible chance* to avoid an unexpected peril created practically simultaneously with the happening of the accident by the negligence of the injured party.'' (*Poncino* v. *Reid-Murdock & Co.,* 136 Cal.App. 223, 227 [28 P.2d 932] ; *Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, 488 ; *Rodabaugh* v. *Tekus, supra,* 39 Cal.2d 290, 294-296.)

We now turn to the record in this case to ascertain if there is any substantial evidence to support *all* of the elements of the doctrine. ▇▇▇ The lack of evidence to support *any one* element is fatal to its application. (*Warren* v. *Ubungen,* 177 Cal.App.2d 605, 608 [2 Cal.Rptr. 411] ; *Di Sandro* v. *Griffith, supra,* 188 Cal.App.2d 429, 437.) ▇▇▇ In doing so we must bear in mind that the evidence to be relied upon is not just '' 'any' '' evidence but must actually be '' 'substantial,' '' *i.e.,* it must be of ponderable legal significance, reasonable in nature, credible and of solid value. (*Estate of Teed,* 112 Cal. App.2d 638, 644 [247 P.2d 54] ; *Di Sandro* v. *Griffith, supra,* 188 Cal.App.2d 428, 435.) Viewing the evidence in the light most favorable to the appellants it appears that there is substantial evidence to support the first element of the formula, *i.e.,* that the passengers were in a position of danger because of their own negligence and that they were unable to escape from such position by the use of ordinary care either because it became physically impossible for them to escape or because they were totally unaware of the danger. The remaining elements, however, lack such support. ▇▇▇ The law recognizes that railroad tracks are in themselves a sign of danger and that a driver intending to cross them must avail himself of every opportunity to look and listen for the approach of a train on the tracks and to yield the right of way to any such train so near as to constitute an immediate hazard. (*Eastman* v. *Atchison, T. & S.F. Ry. Co.,* 51 Cal.App.2d 653, 663 [125 P.2d 564] ; *Koster* v. *Southern Pac. Co.,* 207 Cal. 753, 764 [279 P 788].) The train crew in the present case had, therefore, the right to assume that the driver of the automobile possessed the normal faculties of sight and hearing, and that he could hear the signals and see the approaching train. (*Martindale* v. *Atchison, T. & S.F. Ry. Co., supra,* 89 Cal.App.2d 400.) Brain was the only member of the train crew who saw the automobile prior to the collision. When he was 1,400 feet from

the crossing he could see 2,000 feet down the road. He first saw the automobile's headlights when he was 1,300 feet from the crossing at which time the car was "a great distance" from the crossing. Brain had no reason to then believe that the driver would not stop safely at the crossing, or that he was inattentive and would not apprehend the danger by observing the reflector sign 525 feet from the crossing, the painted sign across the highway, the cross-bar, and the train itself, or that the driver would not hear the bell and whistle. Nor would he have reason to so believe when he next saw the automobile. It was then from 400 to 500 feet from the crossing and was not, as testified by Brain, travelling at an excessive or unusual rate of speed, a speed fixed by the highway patrol officer at from 41 to 50 miles per hour. At this point the train was from 200 to 250 feet from the crossing. There was no evidence adduced as to the distance within which an automobile could be stopped at the speed and under the road conditions at which the vehicle here involved was approaching the crossing. The burden of showing that the automobile could not stop within 500 feet at the speed at which it was travelling was upon the appellants. (See *Young* v. *Southern Pac. Co., supra,* 189 Cal. 746, 753.) In the absence of such a showing, it would be mere speculation to say that Brain then actually knew that the automobile was in a position of danger and that he no longer had the right to assume that Tinnin would obey the law and yield the right of way. In *Rodabaugh* v. *Tekus, supra,* 39 Cal. 2d 290 the court said: "The fact that defendant saw that decedent was looking straight ahead while decedent was traveling approximately 500 feet in approaching the intersection does not establish that decedent was in a position of danger this entire distance. Decedent was not in a position of danger until he arrived at a point at which he could no longer stop or slow down in time to avoid a collision." (P. 294.) The evidence in this case is not sufficient to establish any inference of actual knowledge on the part of the train crew of the automobile's position of danger at any time prior to the train's reaching 150 feet from the crossing. The automobile was then 200 to 250 feet from the crossing. It was then that Brain told the engineer to "hold the whistle." While Brain did testify that he still believed that the automobile could stop at that time and that he "didn't realize" that there was going to be an accident until both the train and the car were about 50 feet from the crossing, actual knowledge of the danger of the automobile's position of danger and actual or constructive

knowledge that its occupants could not escape from such position on the part of the train crew could be inferred as of the time when the train was 150 feet and the automobile 200-250 feet from the crossing. And while it might be inferred that the train crew had the last chance to avoid the accident because it could also be inferred that the occupants of the automobile were oblivious to the train's presence, there is a lack of substantial evidence to support a finding that in the exercise of ordinary care the train crew had a *clear* chance to avoid the accident. Here the train was travelling at 25 miles per hour at the time of the collision. At this speed it covered $36\frac{2}{3}$ feet per second. By simple mathematics we compute that it would cover the 150 feet to the point of impact in from four to five seconds. If the speed of the train was 30 miles per hour at a point 150 feet from the crossing, the time would be even less. Such an interval of time would not afford a last clear chance to avoid the accident. We not only have the additional factors of the reaction time of both Brain and the engineer, but the interval of time between the emergency application of the brakes and their taking hold, together with the weight and forward thrust of a 38-car freight train and a three unit diesel locomotive. Brain testified that an emergency application of the brakes at 150 feet from the crossing would not have reduced the speed of the train to a ''measurable degree'' prior to its reaching the crossing. The evidence discloses that the emergency brakes were applied at the very moment of impact and that the front of the engine thereafter came to a stop 800 feet from the crossing. ■■■ ''The doctrine presupposes time for effective action'' (*Dalley* v. *Williams,* 73 Cal.App.2d 427, 432 [166 P.2d 595]) ; and does not contemplate ''split second'' decisions. (*Rodabaugh* v. *Tekus, supra,* 39 Cal.2d 290, 297 ; *Fambrini* v. *Stikkers,* 183 Cal.App.2d 235, 244 [6 Cal. Rptr. 833] ; *Di Sandro* v. *Griffith, supra,* 188 Cal.App.2d 428, 440.) The doctrine of last clear chance does not apply when the emergency arises suddenly and there are only a few seconds to avoid a collision, and where there is no substantial evidence that the defendant had the time to avoid the collision. (*Hickambottom* v. *Cooper Transp. Co.,* 163 Cal.App.2d 489 [329 P.2d 609] ; *Fambrini* v. *Stikkers, supra,* 183 Cal.App.2d 235, 244.)

In *Hildebrand* v. *Los Angeles Junction Ry. Co., supra,* 53 Cal.2d 826, the locomotive fireman testified he saw the motorcycle when it was 1,000 feet away and continued to watch it until the collision occurred. He did not tell the engineer that

the motorcycle was approaching until it was 75 or 100 feet away when he realized there would be an accident and called to the engineer to stop the train which was going five miles per hour. The brakes were applied at the time of the impact and the train travelled 37 feet before stopping. The fireman testified that the motorcycle was going from 70 to 75 miles per hour, although the plaintiff testified he was going 35 prior to the accident and 15 at the time of collision. The court there sustained the refusal to give the instruction on the doctrine of last clear chance and said: "It is obvious that the collision could not have been prevented by stopping the train after the crew knew plaintiff was in a position of danger. . . ." (P. 830.)

We therefore conclude that the evidence in this case comes within the category of the cases involving collisions between moving vehicles and trains at railroad crossings to which the doctrine of last clear chance is ordinarily inapplicable, and that as a matter of law the record presented no substantial evidence to justify the giving of the requested instruction.

## Conduct of Judge

The appellants complain that during the course of the trial the court made "uncalled for" and "gratuitous" statements which were prejudicial to the appellants, and that it "unnecessarily injected itself" in the case. They point to 11 separate instances in the record, each of which we have considered and do not find to be prejudicial. The record indicates that the appellants were accorded a fair and impartial trial and that the trial judge presided with courtesy and patience. The record is devoid of any indication that the appellants were not given a full opportunity to present their case. Each of the claimed instances of prejudicial error, when read in their proper context, disclose that they arose in conjunction with the court's discussion of the propriety of the admissibility of certain evidence, the validity of objections thereto, the reasons for its rulings, or the clarity of the language in which a question was framed. Appellants' counsel did not object to any of these statements at the time of the trial nor did he make any assignment of misconduct. Counsel for appellants alluded to the court's remarks in only one instance during the course of the trial. After a colloquy between the court and respective counsel as to the validity of an objection, appellants' counsel asked the court to "instruct the jury on the remarks that have just been made so as to clear the record." The court thereupon promptly instructed the jury as follows: "Yes. Any remarks that I made to the attorneys, ladies and gentlemen, has no

bearing on the issues here. You have to decide the facts. As *to anything that I might have said at any time,* please don't take any inference or any leaning one way or the other. We are just discussing rules of evidence. All right." (Emphasis added.) Thereupon appellants' counsel, apparently satisfied with the admonition, rejoined: "Which your Honor knows a good deal more than we do."

It is, of course, the general rule that any exception to an improper remark made by a trial judge during the trial of an action is waived unless an assignment of such misconduct and request to the trial court to instruct the jury to disregard it is made at the time the remark was made or at some time thereafter before the close of the trial, in order to permit the court the opportunity to cure by proper instructions to the jury any injury occasioned by the remark. It is only where it is apparent that such an admonition would not remove the prejudicial effect of the judge's remarks or conduct that the injured party is relieved of his duty to assign such misconduct as error and to request the trial court to instruct the jury to disregard it. (*Estate of Golden,* 4 Cal.2d 300, 311 [48 P.2d 962]; *Etzel* v. *Rosenbloom,* 83 Cal.App.2d 758, 762 [189 P.2d 848].) None of the remarks in this case can even remotely be regarded as coming within this exception to the general rule.

In any event it should be noted that at the beginning of the trial the court admonished the jury that if it said "anything that indicates or seems to indicate to you that I have a leaning one way or the other in the case, or that I favor or have a feeling against either of the parties or either of the attorneys, please disregard that, because it will not be my intention to do that." Again on its own motion at the end of the trial, the trial court instructed the jury to disregard any statement it may have made in discussing with counsel any objection or motion, which statement it may have seemed to them to reflect upon counsel or to indicate that the court had some opinion on the merits of the case or upon some fact or issue involved in the case. Such instructions cured the errors complained of, if any. (*Petersen* v. *Rieschel,* 115 Cal.App.2d 758, 764 [252 P.2d 986]; *Mercado* v. *Hoefler,* 190 Cal.App.2d 12, 23 [11 Cal.Rptr. 787].)

Complaint is also made by the appellants as to "the tone, emphasis, inflection or manner of the spoken words uttered by the trial judge." We, of course, have no way of appraising such tone or manner of speech from the record. Here again no objection was made in the court below nor is

there any reference thereto in the record. Suffice it to say, the objection now comes too late. (*People* v. *Hambrick,* 162 Cal.App.2d 239, 243-244 [327 P.2d 570]; *People* v. *Sakelaris,* 151 Cal.App.2d 758, 759 [312 P.2d 263].)

The judgment is affirmed.

Bray, P. J., and Sullivan, J., concurred.